**UNITED STATES of America,**
**Appellee,**

v.

**Burton Gene BRIERLY, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**William Perry BURGESS, Appellant.**

**Nos. 73–1804 and 73–1805.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1974.

Decided Aug. 16, 1974.

Certiorari Denied Dec. 9, 1974.
See 95 S.Ct. 631.

Alfred A. Beardmore, Charles City, Iowa, for appellant Brierly.

Michael H. Irvine, Cedar Rapids, Iowa, for appellant Burgess.

Gary E. Wenell, Asst. U. S. Atty., Sioux City, Iowa, Evan L. Hultman, U. S. Atty., was with him on brief, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Burton Brierly and William Burgess appeal from their convictions on three counts of an indictment.[1] The critical issue is whether either or both are entitled to reversal on one or more of the counts because an accomplice was permitted to testify with respect to their involvement in the robbery and was permitted to claim the protection of the Fifth Amendment when cross-examined. We affirm.

The trial began with Brierly, Burgess and a third codefendant, Joseph O'Rourke,[2] before the court. Prior to the third day of testimony, O'Rourke changed his plea to guilty and testified on behalf of the government. His testimony on direct examination can be boiled down to: Brierly, Burgess and I planned the robbery, and Burgess and I carried it out. Under cross-examination, he asserted his privilege against self-incrimination in several areas. Brierly and Burgess did not seek to compel O'Rourke to answer but moved to strike his entire testimony, and the trial court overruled the motion. The defendants allege this was error and that their convictions must be reversed.

A brief summarization of the facts will suffice to place the objection in context. The First State Bank in Nora Springs, Iowa, was robbed at about 11:30 a. m. on January 23, 1973, by a man wearing a ski mask and overalls with patches and carrying a 16-gauge shotgun and duffle bag. Witnesses testified that early that same morning, Burgess and O'Rourke had purchased a ski mask, duffle bag and 16-gauge shotgun shells in Mason City, Iowa.[3] Witnesses placed Burgess and O'Rourke in Nora Springs on the morning of the crime. The getaway car used in the robbery was owned by Burgess.

O'Rourke was arrested the afternoon of the robbery in Nora Springs in the getaway car. Money stolen in the robbery was found on him. Burgess was arrested at a cabin outside of Nora Springs where money stolen in the robbery, the overalls, duffle bag, 16-gauge shotgun shells, ski mask, Browning 16-gauge shotgun and a shotgun case were found. The shotgun and shotgun case were identified as having been recently stolen from a residence in Nora Springs.

O'Rourke testified: that he, Burgess and Brierly had met at Brierly's home and had discussed robbing the bank at Nora Springs, Iowa, and that two days after the meeting, they went for a drive looking for hideouts; that the three men met for a second time at a hotel in Mason City where they agreed on the time of the robbery; that Brierly was to pick him up after the robbery, and that he was waiting for that event to occur when he was arrested; that arrangements had been made for him to purchase an automobile that Brierly had been driving and holding for sale for another; that he and Brierly would drive

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Count I, conspiracy to rob a federally insured bank. Count II, robbery of the bank by force and violence. Count III, larceny from the bank. Brierly was charged as an aider and abettor in Counts II and III. Brierly received concurrent three-year sentences on each count. The sentence on Count III was later vacated. Burgess received consecutive sentences of five years imprisonment on Count I and twenty-five years imprisonment on Count II. The sentence on Count II encompassed the charges as to Count III.

2. A third codefendant, Joseph O'Rourke, was named but not charged as a co-conspirator in Count I, charged in Count II, not charged in Count III and charged alone with possession and receipt of stolen money in Count IV.

3. Mason City, Iowa, is about eight miles from Nora Springs, Iowa.

to Mason City in the car after the robbery; and that the three men were to meet at Albert Lea, Minnesota, to divide the stolen money.

The defendants contend that O'Rourke's assertion of privilege unduly restricted cross-examination in three areas: first, with regard to a sheriff's badge which was found on O'Rourke at the time of his arrest and which belonged to Brierly; second, with regard to the shotgun used in the robbery; and, third, with regard to the reason for O'Rourke being parked near the Nora Springs school at the time of his arrest.

■ We recognize that the testimony of a witness on direct examination may be used against a defendant even though a witness asserts the privilege against self-incrimination upon cross-examination where the testimony sought to be elicited goes to collateral matters or the credibility of the witness. If, however, the witness—by invoking the privilege—precludes inquiry into the details of his direct testimony so that there is a substantial danger of prejudice, the direct testimony should be stricken in whole or in part. Necessarily, the trial court has discretion in this area, and only in a case of abuse of such discretion resulting in obvious prejudice should an appellate court intervene. Coil v. United States, 343 F.2d 573 (8th Cir.), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965); Smith v. United States, 331 F.2d 265 (8th Cir.), cert. denied, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34 (1964). We have reviewed the record and find no abuse of discretion.

■ The questions which O'Rourke refused to answer went to collateral matters or were intended to elicit answers which would tend to impeach him. Brierly admitted that he knew O'Rourke

and had associated with him in the two weeks before the robbery. Thus, the question of whether O'Rourke stole or was given the sheriff's badge was clearly collateral. The questions with respect to the shotgun were with reference to a gun which was not used in the robbery. They were designed to show that O'Rourke had lied to the FBI with respect to the gun used in the robbery, and were obviously intended to impeach O'Rourke. And the questions with respect to the stalled car were asked for the same purpose.

Each defendant has made other assignments of error.

Brierly contends: [4]

(1) That a continuance should have been granted until his counsel could obtain a transcript of a pretrial hearing on O'Rourke's motion to suppress incriminating statements made by him. That hearing was held approximately one week prior to commencement of the trial. O'Rourke testified in an extremely vague manner. He remembered nothing about the robbery and stated he did not know when he had eaten last, where he had slept the night before or what a lawyer, an oath or the Constitution was. His testimony was sufficiently disturbing so that the government, at the urging of the trial court, moved for a psychiatric examination. The examination was made and O'Rourke was determined to have a low intelligence quotient but to be competent to stand trial.

■■ We find no abuse of discretion in refusing to grant a continuance. The granting of such a motion is discretionary with the trial court. See, United States v. Leach, 429 F.2d 956 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971), and cases cited therein. Brierly's counsel was given notice of the hearing and failed to at-

4. We find no merit in Brierly's other assignments of error, namely: (1) The prosecution failed to inform him of evidence favorable to his position; (2) the jury was denied an opportunity to hear all the material evidence bearing on O'Rourke's credibility; (3) the instructions given by the trial court to the jury regarding O'Rourke's change of plea was inadequate to protect him; and (4) the government used its position of power to control O'Rourke's bail and thereby force him to cooperate.

tend or arrange for substitute counsel to attend. While the record had not been transcribed by the reporter by the time the motion for continuance was made, the trial court offered to have the reporter read the transcript. This offer was refused by counsel. We think the court's offer was sufficient. We further note that Burgess's counsel was present at the hearing. Moreover, counsel for the defendants hammered home the point that O'Rourke's memory recovered remarkably once the plea was entered.

 (2) That the government failed in its duty to advise counsel of information favorable to the defense. The short answer to this contention is that there was no favorable information to be given. To require the government to tell counsel that O'Rourke had testified at the hearing and did not recall being involved in the robbery, borders on the frivolous. *Cf.,* United States v. Hernandez, 441 F.2d 157 (5th Cir.), cert. denied, 404 U.S. 847, 92 S.Ct. 150, 30 L. Ed.2d 84 (1971); United States v. Soblen, 301 F.2d 236 (2nd Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L. Ed.2d 810 (1962).

 (3) That the jury was denied an opportunity to hear evidence regarding O'Rourke's credibility in that the transcript of O'Rourke's pretrial testimony was not entered in the record. The answer to this contention is that the transcript was not available, and the fault does not lie with the government. Moreover, the substance of O'Rourke's testimony at the pretrial hearing was brought to the attention of the jury through cross-examination.

 (4) That the trial court erred in denying the defendant's motion for a mistrial. The defendant, early in the trial, alleged that the government was

involved in a scheme to introduce evidence against O'Rourke and then accept a guilty plea and place O'Rourke on the stand. The defendant further alleges that the scheme was put into effect with O'Rourke's connivance and the price of his testimony was the dropping of the robbery charge. The government and O'Rourke's counsel have vigorously denied any agreement.

In view of O'Rourke's unexpected testimony at the pretrial hearing and the order for psychiatric examination, the government was rightly and commendably concerned with O'Rourke's competency to make a plea. It was not until O'Rourke's counsel had assured the government that O'Rourke was capable of entering a plea and that O'Rourke had been able to assist in his own defense, that the government felt it could accept the plea. The government had been constantly reevaluating its case and concluded it could accept the plea provided O'Rourke could make a meaningful factual record for his plea. It was not until O'Rourke had completed his plea that the government determined to put him on the stand.

 We further note that the evidence against O'Rourke would have been admissible against the defendants inasmuch as O'Rourke was an unindicted co-conspirator and, as such, his acts and declarations in furtherance of the conspiracy would be admissible against the other conspirators.[5]

 Burgess's first contention is that the evidence against him was insufficient to convict. We disagree. O'Rourke's testimony clearly implicated Burgess. Moreover, the government proved that Burgess bought the ski mask, bank employees identified the mask, and the mask was found in the vicinity of the place where Burgess was

5. It is well settled that the statements of conspirators are admissible against all members of the conspiracy so long as there is other independent evidence showing, in fact, a conspiracy between the declarant and the others.

National Dairy Products Corporation v. United States, 350 F.2d 321, 337 (8th Cir. 1965), vacated on other grounds, 384 U.S. 883, 86 S.Ct. 1913, 16 L.Ed.2d 995 (1966), and cases cited therein.

arrested. Other items (shotgun, coveralls with patches and the duffle bag) known to have been worn or carried by the robber were found in the same area. The serial numbers on the bills taken from the bank matched the serial numbers on the bills found in the woodpile located fifteen feet away from the cabin in which the defendant was arrested. There was only one set of tracks in the new snow leading to the cabin and woodpile. Burgess was alone in the cabin. Unless the jury could find that someone else had levitated himself from the road to the woodpile, they could not conclude other than that the defendant was guilty.

Burgess's second contention is that the trial court erred in failing to instruct the jury on 18 U.S.C. § 2113(c), receiving or possessing money, as a lesser included offense under 18 U.S.C. § 2113(b), taking and carrying away. The defendant is mistaken. It is clear that these are separate crimes aimed at separate individuals and that the same person cannot be guilty of both, *i. e.*, cannot take and carry away and receive and possess the same stolen money. Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); United States v. White, 440 F.2d 978 (5th Cir. 1971).

Burgess's final contention is that the trial court erred in denying his motions for severance which were made prior to and during the trial. He contends that the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was violated. He argues that the reading of the indictment, when combined with the government's opening statement, provided a link by which the jury could identify him as the unnamed person in the statements made by codefendants to law enforcement agents and to which statements the agents testified. The government assured the trial court before trial that agents would not mention the names of other codefendants but only the name of the person making the statement. This procedure was adhered to by the witnesses, and such a procedure has been approved of by this Court. Slawek v. United States, 413 F.2d 957 (8th Cir. 1969).

We find no merit in Burgess's other contentions and no error in the trial court's rulings.

Affirmed.