**William H. CARLOS, Petitioner,**

v.

**Donald W. WYRICK, Respondent.**

**No. 81–0133–CV–W–5.**

United States District Court,
W.D. Missouri, W.D.

April 4, 1984.

John T. Maughmer, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo., for petitioner.

Jay D. Haden, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## ORDER

SCOTT O. WRIGHT, District Judge.

Petitioner William Carlos, presently incarcerated and in the custody of the State of Missouri at the Ozark Correctional Center in Fordland, Missouri, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from a 1974 state court conviction for first degree murder resulting in a sentence of life imprisonment. The parties are in agreement that no evidentiary hearing is necessary in this case, and the Court concludes that the matter may be resolved on the basis of the existing record which includes portions of the trial transcript, opinions of the state appellate courts, and the thorough briefs submitted by the parties. There is no dispute that the petitioner has exhausted his state remedies. *See State v. Carlos,* 549 S.W.2d 330 (Mo.1977).

■ The sole issue presented by petitioner involves a determination of the scope of a criminal defendant's Sixth Amendment right of confrontation, a right that guarantees the opportunity for adequate cross-examination in both federal and state criminal proceedings. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Specifically, petitioner argues that his Sixth Amendment right of confrontation was violated by the state trial court's failure to strike the direct testimony of a crucial prosecution witness who refused to answer questions on cross-examination. It is the conclusion of this Court that the trial court abused its discretion in failing to order a partial striking of the witness's testimony, and that the trial court committed error seriously prejudicing the petitioner's ability to establish a defense. Accordingly, the petition for a writ of habeas corpus will be granted.

### I. *Facts and Prior Proceedings*

Carlos was brought to trial in the Circuit Court of Jackson County, Missouri, and was convicted of first degree murder. Carlos was charged with hiring an individual named Patrick McGuire to kill Dr. Lynn Weller. Weller was murdered at his residence on September 17, 1973.

At trial, Mary Graves, an employee and social acquaintance of Weller, testified that on the night of September 17, 1973, she went to Weller's home and knocked on his door, but received no answer although she was expected. According to Graves, the following events took place. As Graves started to leave Weller's house, she saw two men in the driveway, both of whom were holding weapons. Neither of the two men was wearing a mask or disguise when Graves first saw them, however, both men later put masks over their faces as they prepared to enter Weller's residence. Graves encountered the two men in the driveway and was forced to return to Weller's residence and knock on the door. When Weller answered the door, Graves was pushed into the house. One of the men was carrying a shotgun when Weller answered the door. On opening the door, Weller grabbed the shotgun and a struggle ensued between Weller and that assailant. During this struggle the other intruder shot Weller with a handgun. The two men

then ordered Weller to lie on the floor and ordered Graves into another room. While in the other, Graves heard a discussion between the two assailants and Weller which included one of the men specifically asking Weller, "where is it?" Graves then heard a loud gunblast from the other room, after which the two intruders left without being seen again by Graves.

At the trial, Patrick McGuire testified for the prosecution as a result of a plea bargain arrangement.[1] McGuire testified that he was hired by Carlos to kill Weller, and that on the night of September 17, 1973, he went to Weller's residence and entered the house after forcing a woman whom he found there to knock on the door. Although McGuire testified that a second man accompanied him to Weller's residence, he denied that the other man entered with him or participated in the murder of Weller. McGuire testified that he was armed with both a shotgun and a handgun. According to McGuire, when he and Weller struggled over the shotgun, he managed to wound Weller with a shot from the handgun and later killed Weller with the shotgun. McGuire testified that his unidentified companion did not have a weapon at the time.

On cross-examination, Carlos's trial counsel attempted to question McGuire about the identity of McGuire's companion present at Weller's house on the night of the murder and about McGuire's relationship with that man. McGuire, however, refused to answer those questions, although he did not invoke his Fifth Amendment privilege against self-incrimination. After admitting that he entered into a plea bargain with the prosecution, McGuire testified as follows:

> Q. (defense counsel) Right. Now, another part of the bargain, was it not, was that you were not going to have to tell who was involved in this offense with you, the other man that was out there at the premises?
>
> A. I think that was part of it, yes.
>
> . . . . .
>
> Q. Now, who was the other trigger man? Who was the other man out there?
>
> A. I would rather not answer.
>
> Q. Well, I would rather you would. Answer the question. Who was out there?
>
> A. (No response.)
>
> Q. Are you refusing to say?
>
> A. I would rather not answer.
>
> . . . . .
>
> Q. (defense counsel) You have refused to answer the question of who it was. I would ask this question: Where is that man at now?
>
> A. I don't know.
>
> Q. How did you contact him prior to the incident, the killing of Dr. Weller?
>
> A. I would rather not answer that.
>
> Q. Are you refusing to answer that?
>
> A. I am.
>
> Q. Did you pay him any portion of the money?
>
> A. No.
>
> Q. Has he been arrested?
>
> A. I don't know.
>
> Q. Did he ever have any contact with Dr. Carlos?
>
> A. No.
>
> DEFENSE COUNSEL: I would make the same request, your Honor, as to how he contacted whoever this man was, and ask that the Court order him to testify.
>
> (Counsel approached the bench and the following proceedings were had:)
>
> THE COURT: Do you want a recess now?
>
> MR. HUMPHREY: Whatever you want to do.

---

1. Prior to Carlos's trial, McGuire had been charged with first degree murder in connection with Weller's death. In exchange for his testimony, the prosecution agreed to reduce that charge to second degree murder and to recommend a sentence of twenty-five years which was to run concurrently with a twenty-five year sentence McGuire had previously received for an unrelated robbery. That recommendation ultimately was accepted by the sentencing court.

(The proceedings returned to open court.)

THE COURT: Gentlemen of the jury, we will have a recess for twenty minutes.

### RECESS

THE COURT: Mr. Duncan, would you repeat the questions to the witness?

Q. (defense counsel) Mr. McGuire, I would ask you now, who was the other man that was present, hiding in the bushes, on the night of September 17th, 1973 at 7320 Manchester, the home of or whatever the address is, and I believe that's correct—the home of Dr. Weller, on the evening and there at the time that you killed Dr. Weller? What was that man's name?

A. I would rather not answer.

Q. The second question: How did you get in contact with that man, whoever he was, regarding being with you on the killing?

A. I would rather not answer that.

DEFENSE COUNSEL: I would now, your Honor, ask that the Court direct Mr. McGuire to answer those questions and if he refuses, to hold him in contempt under Section 491.200 of the Missouri Statutes, by which he would be confined until he purges himself of contempt, and ask for a continuance pending him purging himself of contempt, or, in the alternative, granting a mistrial.

THE COURT: Mr. McGuire, the Court directs you to answer the questions asked. If you refuse to do so you are in contempt of this Court. Do you refuse to answer?

THE WITNESS: I do.

DEFENSE COUNSEL: I would then, your Honor, ask for the relief I have previously mentioned.

THE COURT: All right. Mr. McGuire, the Court holds you in contempt of this Court for the refusal to answer the questions, and will commit you to the custody of the Jackson County Jail until such time as you purge yourself of

your contempt. In this sense and for this purpose, you are your own jailer.

Since the Defendant is already in the custody of the Jackson County Jail, we may continue.

Following a discussion between the trial judge and counsel, Carlos's motions for mistrial and continuance were denied. The trial judge did not strike McGuire's testimony, and the trial proceeded and concluded with a verdict of guilty. McGuire did not purge himself of the contempt order imposed by the trial court during the remainder of the trial or at any time thereafter.

## II. *Cardillo and the Right of Confrontation*

■ The Confrontation Clause of the Sixth Amendment reflects a preference for face-to-face confrontation at trial, and a primary interest established by the provision is the right of cross-examination. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980). The purpose of the clause is to provide a personal examination and cross-examination of the witness in which the defendant has the opportunity not only to test the recollection of the witness, but also to compel him to stand face-to-face with the jury so that they may judge his credibility by his demeanor. *Id.* The Sixth Amendment right to confront witnesses is a fundamental right applicable to state court proceedings by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The right of confrontation and cross-examination is an essential and fundamental requirement necessary for a fair trial in a criminal prosecution. *Id.*

■ In a situation such as the instant case, where a prosecution witness testifies fully on direct but refuses to respond to questions on cross-examination, the scope of the Sixth Amendment right of confrontation is controlled by the standard established in *United States v. Cardillo,* 316 F.2d 606 (2nd Cir.1963). Whether the trial court must strike all or part of a witness's

direct testimony when the witness refuses to answer cross-examination questions requires "an analysis of the purpose of the inquiry and the role which the answer, if given, might have played in the defense." *Cardillo, supra,* 316 F.2d at 612. The court in *Cardillo* described the standard as follows:

In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. (cites omitted) On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part (cites omitted).

*Cardillo, supra,* 316 F.2d at 610–11. The court in *Cardillo* discussed three categories of testimony to be considered:

The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of

the testimony was connected solely with one phase of the case in which even a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose.

*Cardillo, supra,* 316 F.2d at 613.[2]

The *Cardillo* standard requires that the reviewing court inquire into whether the material sought to be explored on cross-examination is "collateral" or whether it is so closely related to the commission of the crime that the entire testimony of the witness should be stricken. *Cardillo, supra,* 316 F.2d at 613. If the purpose of cross-examination is to explore more than general credibility, the subject of the inquiry is not collateral. *Dunbar v. Harris,* 612 F.2d 690, 693 (2nd Cir.1979). "The question is whether the defendant's inability to examine the witness precludes defendant from testing the truth of the witness's direct testimony, *Fountain v. United States,* 384 F.2d 624, 628 (5th Cir.) *cert. denied,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968), or whether the answers solicited might have established untruthfulness with respect to specific events of the crime charged. *Cardillo,* 316 F.2d at 613." *Dunbar v. Harris, supra,* 612 F.2d at 693.

The *Cardillo* case involved the testimony of two government witnesses at a criminal trial in which the defendants were convicted of a conspiracy charge and of interstate transportation of stolen property. The first witness, after testifying about his involvement in the criminal plan, refused to answer questions about past crimes or pending charges. Although the trial court

---

**2.** This test has been approved in subsequent decisions of the Eighth Circuit. *See United States v. Gould,* 536 F.2d 216 (8th Cir.1976); *United States v. Brierly,* 501 F.2d 1024 (8th Cir. 1974); *Coil v. United States,* 343 F.2d 573 (8th Cir.1965); and *Smith v. United States,* 331 F.2d 265 (8th Cir.1964).

In addition, the *Cardillo* standard has been adopted by several other courts. *See United*

*States v. LaRiche,* 549 F.2d 1088 (6th Cir.1977); *United States v. DiGiovanni,* 544 F.2d 642 (2nd Cir.1976); *United States v. Newman,* 490 F.2d 139 (3d Cir.1974); *United States v. Ginn,* 455 F.2d 980 (5th Cir.1972); *United States v. Norman,* 402 F.2d 73 (9th Cir.1968); *United States v. Smith,* 342 F.2d 525 (4th Cir.1965).

refused to strike the witness's direct testimony, the Second Circuit held that there was no constitutional error because the cross-examination questions related solely to the witness's credibility, and not to the subject of his direct testimony. *Cardillo*, 316 F.2d at 611.[3]

A second witness in *Cardillo* refused to reveal on cross-examination the source of $5,000 he claimed to have given a defendant in a stolen property transaction. The Second Circuit ruled that the witness's refusal to identify the source of the money denied the defendant the opportunity to cross-examine with respect to events that were the subject of direct testimony. *Cardillo, supra,* 316 F.2d at 613.

In *United States v. Newman,* 490 F.2d 139 (3d Cir.1974), a defendant was convicted of illegal wiretapping. On cross-examination by the defendant, a witness refused to answer questions relating to his involvement in prior wiretaps. The Third Circuit ruled that the witness's refusal to answer required a partial striking of his direct testimony. Because the prosecution had alleged a partnership between the defendant and the witness, the court in *Newman* determined that the independent acts of the witness were not collateral. The court noted that it would have been possible for the jury to infer from the alleged partnership arrangement that if the witness participated in a wiretap, then so did the defendant. It was the purpose of the defendant's cross-examination to undermine this inference by establishing that the witness often acted independently during prior wiretaps. The court in *Newman* concluded that in light of the strong inference resulting from the testimony regarding the alleged partnership, the defendant should have been permitted to question the witness completely on the operation of the partnership, and that the witness's refusal to answer ques-

tions on the subject should have resulted in the striking of testimony concerning the partnership. *Id.* at 146.

### A. *The Nature of the Cross-examination of Witness McGuire.*

Regarding the instant case, McGuire refused to answer two questions on cross-examination after testifying on direct that he was hired by Carlos to kill Weller, and that pursuant to that plan he (McGuire) murdered Weller. On cross-examination, McGuire declined to state the name of the person present with him at Weller's house, and refused to describe how he contacted that individual.

 In analyzing whether the trial court erred in failing to strike McGuire's direct testimony, this Court must determine the role which the answers, if given, *"might"* have played in the defense." *Cardillo, supra,* 316 F.2d at 612 (emphasis added). Where the witness refuses to testify on a purely collateral matter, the witness's direct testimony may stand. *Id.* at 610. The subject of cross-examination is not collateral if its purpose is to explore more than general credibility. *Dunbar v. Harris, supra,* 612 F.2d at 693. If the refusal of the witness precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice and, therefore, the witness's testimony should be stricken in whole or in part. *Cardillo, supra,* at 610–11.

 In the instant case, it is clear that the purpose of the cross-examination was not to impeach the credibility of McGuire, rather, the crucial function of the inquiry was to examine the details of McGuire's direct testimony regarding the circumstances surrounding Weller's murder. Had Carlos been able to cross-examine McGuire concerning the identity of

---

**3.** *See also United States v. Norman,* 402 F.2d 73, 76–77 (9th Cir.1968) (witness's refusal to admit drug dealings other than those that were the subject of trial considered collateral because they were unrelated to details of direct testimony); *United States v. Ginn,* 455 F.2d 980 (5th Cir.1972) (source of property sold by witness

unrelated to charge that defendant purchased them with counterfeit currency); and *Fountain v. United States,* 384 F.2d 624, 628 (5th Cir.1967) (source of funds used by witness to travel following defendant's arrest was not directly in issue and therefore collateral).

McGuire's companion and the nature of the connection between McGuire and his accomplice, there would have been several possible responses that could have aided Carlos's defense.

Carlos's theory of defense at trial was that McGuire was present at Weller's residence with the unidentified man for the purpose of committing a robbery, a crime for which McGuire previously had been convicted on an unrelated charge. McGuire's testimony was that on the night in question, he approached Weller's residence with a companion. Although McGuire testified that he entered Weller's residence, he further testified that his companion did not enter the residence, did not have a weapon in his possession, and did not otherwise participate in Weller's murder. McGuire testified that he then encountered a woman whom he forced to knock on Weller's door. McGuire testified that at the time he was armed with both a shotgun and a handgun, and that upon entering the residence Weller grabbed the shotgun and a struggle ensued. While struggling for the shotgun with Weller, McGuire shot Weller with the handgun and subsequently killed Weller with the shotgun before fleeing.

Much of McGuire's testimony is in direct conflict with that of Mary Graves, who is the only other identified witness to the murder. Graves testified that on the night in question she was confronted outside Weller's residence by two men, both of whom were armed. Graves testified that after Weller opened the door both men entered, and that Weller struggled with the man holding the shotgun (McGuire) and was shot by McGuire's companion with the handgun. According to Graves, the two men then forced her into one room and Weller into another. While in her room, Graves overheard a conversation between the two intruders and Weller relating to the location of certain items in the house. Graves further testified that she specifically heard one of the men ask Weller, "where is it?" Carlos contends that her testimony suggests that the two intruders were at Weller's residence for the purpose of committing a robbery, and not for the purpose of murdering Weller pursuant to a plan involving Carlos.

It is the conclusion of this Court that because Carlos was unable to cross-examine McGuire about the circumstances of the subject matter of McGuire's direct testimony, Carlos was denied the opportunity to establish his version of the incident. A truthful answer by McGuire in response to the question on cross-examination seeking the nature of the contact between McGuire and his companion could have confirmed Carlos's contention that the murder was the result of a plan by the two intruders to rob Weller. Moreover, had McGuire revealed the identity of his companion, there would have been several possibilities. First, as the respondent suggests, McGuire's companion may not have been available as a witness. Second, the unidentified companion may have testified that neither he nor McGuire was hired by Carlos to murder Weller, and that he and McGuire jointly participated in the murder for purposes unrelated to Carlos such as robbery. Finally, the unidentified companion may have testified that McGuire did not participate in Weller's murder or even have knowledge of the facts surrounding Weller's death. Such testimony would have supported Carlos's argument that McGuire testified as he did only because of his plea bargain arrangement with the prosecution.

Moreover, it is apparent that the questions raised on cross-examination were directed not merely for the purpose of a general attack on McGuire's credibility, rather, the purpose of this line of inquiry was to examine the details related to McGuire's direct testimony. Accordingly, this Court concludes that the questions on cross-examination did not involve collateral matters or cumulative testimony concerning credibility, rather, McGuire's refusal to answer precluded an inquiry into the truth of his direct testimony and, therefore, McGuire's testimony should have been stricken in whole or in part. *Cardillo, supra*, 316 F.2d at 610–11.

## B. *Prejudice to the Petitioner and Harmless Error.*

The respondent argues that even if McGuire had answered the questions put to him on cross-examination, Carlos's defense would not have been materially advanced thereby and the prosecution's case would not have been undermined. Respondent suggests that both the prosecution and the defense suspected that the name of McGuire's accomplice was George Peters, who was wanted at that time in connection with the murder of Dr. Weller. Respondent contends that Peters had eluded a nationwide manhunt at the time of Carlos's trial and was unavailable to either side as a witness. Respondent concludes that even if McGuire had named Peters as his accomplice, Carlos would not have been aided because Peters was unavailable. Finally, the respondent suggests that answers to the questions on cross-examination would not have rebutted the evidence against Carlos. For these reasons, the respondent argues that Carlos was not prejudiced by the trial court's failure to strike McGuire's testimony, and that, therefore, Carlos was not denied his right to confrontation.

### 1. *The Existence of Prejudice.*

According to *Cardillo*, however, the proper analysis for the reviewing court to apply requires an examination "of the purpose of the inquiry and the role which the answer, if given, *might* have played in the defense."[4] *Cardillo, supra,* 316 F.2d at 612 (emphasis added). The Second Circuit in *Cardillo* noted that "despite the original claim that ... [petitioner's] proposed cross-examination related to 'credibility,' it was not the type of testimony that would have developed the general unsavory character of the witness as might questions dealing with prior convictions. The answers solicited *might* have established un-

truthfulness with respect to events of the crime charged. It is in this field that the decisions appear to call for the striking of testimony." *Id.* at 613 (emphasis added).

Similarly, the Supreme Court has stated the following with respect to the nature of prejudice which results from the denial of the right of confrontation:

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. (cites omitted) To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). Accordingly, the proper analysis under *Cardillo* to determine a denial of the right of confrontation is not, as respondent suggests, whether the answers, if given, would necessarily have assisted the defense, rather, the proper standard requires the reviewing court to determine whether there is a substantial danger of prejudice by examining the role which the answers, if given, might have played in the defense.

In applying this analysis in the instant case, it is this Court's conclusion that there was a substantial possibility that McGuire's answers, if given, would have assisted Carlos's defense. Although it may be, as re-

---

4. According to the Eighth Circuit, where the refusal of the witness to answer questions on cross-examination "precludes inquiry into the details of his direct testimony so that there is a substantial danger of prejudice, the direct testimony should be stricken in whole or in part." *United States v. Brierly, supra,* 501 F.2d at 1027. The trial court necessarily has discretion in this

area, and a reviewing court should intervene only in a case involving an abuse of discretion. *Id.* Courts may consider the nature and significance of the witness's testimony to determine the probability of resultant prejudice to a defendant because of the inability to fully cross-examine the witness. *United States v. Gould supra,* 536 F.2d at 222.

spondent suggests, that the unnamed accomplice was George Peters, that Peters was unavailable as a witness, and that McGuire and Peters were acting at the time of Weller's murder pursuant to a plan involving Carlos, nonetheless it is also possible that answers by McGuire would have supported Carlos's contention that McGuire and his accomplice were acting pursuant to other motives. Because of that possibility, this Court concludes that McGuire's refusal to answer questions on cross-examination precluded an inquiry into the details of his direct testimony so that there was a substantial danger of prejudice. In addition, it is the conclusion of this Court that Carlos was prejudiced by the trial court's failure to strike McGuire's testimony in that there is a substantial possibility that in the absence of such testimony the jury would have returned a verdict of not guilty. Therefore, the failure on the part of the trial court to strike *sua sponte* the direct testimony of McGuire constituted an abuse of discretion which denied Carlos his right of confrontation and which deprived him of a fair trial.

### 2. *Harmless error.*

The respondent argues that Carlos was not denied a fair trial because regardless of what answers might have been given by McGuire, such evidence would not have rebutted the evidence presented at trial in support of Carlos's guilt. In light of the Court's previous determination that there was a constitutional violation due to the substantial danger of prejudice to Carlos under the *Cardillo* analysis, the Court construes respondent's above contention as an argument that the trial court's failure to strike McGuire's testimony constituted harmless error.

At least one court has stated that violations of the confrontation clause may in the appropriate case be declared harmless. *See Klein v. Harris*, 667 F.2d 274,

290 (2nd Cir.1981). Assuming that such a rule is applicable to the instant case, in order to conclude that Carlos was not harmed by the federal constitutional violation that occurred here, the Court must conclude that the violation was harmless beyond a reasonable doubt.[5] *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See also State v. Gagnon*, 497 F.2d 1126, 1130 (7th Cir.1974).

The "heavy burden imposed by *Chapman* derives from the principle that, since a holding that an error of constitutional dimension was non-prejudicial is a factual determination, a reviewing court should not lightly find a constitutional error to have been non-prejudicial, particularly where ... the defendant's constitutional right of trial by jury would be implicated by such appellate fact-finding." *Klein v. Harris supra,* 667 F.2d at 290.

In this case, the Court has a substantial doubt that the jury would have found Carlos guilty beyond a reasonable doubt if the trial judge had ordered the direct testimony of McGuire stricken, or if McGuire had responded to Carlos's questions on cross-examination. Although it is possible, and maybe even probable, that the jury would have convicted Carlos in any event, where the question of whether "the jury would have reached the same determination in an error-free trial is open to doubt, the Supreme Court has directed the reviewing court *not* to speculate as to what the jury would have done had the error not been committed, but instead to reverse the conviction and order a new trial." *Klein v. Harris supra,* 667 F.2d at 291 (emphasis original).

Furthermore, a review of the circumstances surrounding McGuire's testimony indicates that the denial of Carlos's Sixth Amendment right was not harmless. The credibility of McGuire, the prosecution's chief witness against Carlos, was particu-

---

**5.** The standard for harmless error review of nonconstitutional violations is that such error is harmless if the reviewing court has a fair assurance that the judgment was not substantially swayed by the error. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). This standard does not govern harmless error review of the constitutional error which occurred here. *See Klein v. Harris, supra,* 667 F.2d at 290 n. 10.

larly subject to challenge because McGuire testified on behalf of the state only after entering into a plea bargain arrangement. Under the terms of this agreement, the charge of first degree murder pending against McGuire in connection with Weller's death was reduced to second degree murder. In addition, a sentence of 25 years was imposed to run concurrently with a 25-year sentence McGuire had previously received on an unrelated robbery charge. Furthermore, and perhaps most importantly, McGuire apparently was given some type of "guarantee" as part of the plea bargain that he would not be required to divulge at trial the name of his accomplice. Therefore, in exchange for his testimony against Carlos, the charges against McGuire were reduced, a sentence was imposed which did not require McGuire to serve any additional time in prison for his role in Weller's death, and McGuire was assured that he would not be required to implicate his companion. In view of these circumstances, it is readily apparent that the truthfulness of McGuire's testimony concerning the circumstances of Weller's murder was a crucial issue at Carlos's trial. There can be no question that the inability of Carlos to cross-examine McGuire about such important subject matter was harmful to Carlos's defense, and the constitutional deprivation resulting from the trial court's failure to strike McGuire's direct testimony is magnified by the circumstances surrounding McGuire's appearance as a prosecution witness. "Indeed, cross-examination, as has been often observed, is the surest test yet devised of the truthfulness of a witness' testimony, and its allowance is especially important in the case of a witness who is himself an admitted violator of the law." *Montgomery v. United States*, 203 F.2d 887, 891 (5th Cir.1953).

## C. *Scope of the Error.*

According to *Cardillo*, there are two situations in which a striking of direct testimony is required. The first category is one in which "the answer would have been so closely related to the commission of the crime that the entire testimony of the wit-

ness should be stricken." *Cardillo, supra,* 316 F.2d at 613. "The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice." *Id.* In *United States v. Newman, supra,* the prosecution had alleged the existence of a partnership between the defendant and a witness involving illegal wiretapping. On cross-examination by the defendant, the witness refused to answer questions about his activity in prior wiretaps. The court in *Newman* concluded that it was the purpose of the cross-examination to challenge the partnership allegation by establishing that the witness often acted independently during the previous wiretaps. In applying the *Cardillo* analysis, the court noted that the witness's refusal to answer questions on the subject was connected with only one phase of the prosecution's case, and concluded that a partial striking of the witness's direct testimony regarding the partnership was required. *United States v. Newman, supra,* 490 F.2d at 146.

In the instant case, the state was required to prove that Carlos hired McGuire to kill Weller, and that McGuire actually killed Weller pursuant to that plan. The state has made no suggestion that Carlos was a participant in the actual killing of Weller or that Carlos was at or near Weller's house at the time of the murder. Similarly, there is no suggestion that McGuire's unidentified companion met with Carlos or was in any way involved in the alleged conspiracy between Carlos and McGuire. The evidence involved in establishing the two phases of the state's case was distinct with respect to the time the two incidents took place, the location of the separate acts, and the individuals involved in each incident.

■ There is no question that McGuire's refusal to identify his accomplice denied Carlos his right to cross-examine McGuire regarding the phase of the trial concerning the actual killing of Weller. Similarly, McGuire's refusal to explain how he contacted the accomplice with re-

spect to the killing denied Carlos the opportunity to cross-examine McGuire as to McGuire's motives at the time of the murder. Accordingly, the Court concludes that McGuire's refusal to answer questions bearing directly on the circumstances surrounding the murder deprived Carlos of his right of confrontation as to that phase of the case, and McGuire's testimony concerning the events arising at the time and place of the killing should have been stricken.

With respect to the phase of the case involving Carlos's hiring of McGuire to kill Weller, however, McGuire's testimony resulted in no constitutional defect, as McGuire testified fully and answered all cross-examination questions regarding the alleged agreement. There has been no suggestion that McGuire's unidentified companion had any knowledge of the agreement and, therefore, Carlos was not denied his right to cross-examine McGuire on that phase of the case. Therefore, the trial court was not required to strike McGuire's testimony relating to his agreement with Carlos to kill Weller.

■ The Court is aware that whether all or part of the testimony should be stricken "must depend upon the discretion of the trial judge exercised in light of the particular circumstances." *Cardillo, supra,* 316 F.2d at 613. A careful examination of the circumstances in this case, however, reveals that McGuire refused to answer questions which related directly to the truthfulness of his direct testimony concerning the events of the actual killing, and that these questions were neither collateral nor cumulative. As a result, Carlos was denied his right to test the truth of McGuire's statements on direct examination describing the circumstances existing at the time and place of the murder, and, therefore, the trial court's failure to order a partial striking of McGuire's testimony constituted error seriously prejudicing Carlos's ability to establish an effective defense and abridging his Sixth Amendment right of confrontation. Accordingly, it is hereby

ORDERED that Carlos's petition for federal habeas corpus relief is granted. It is further

ORDERED that Carlos's conviction is declared to be null and void in that it was obtained in violation of his constitutional rights, and that Carlos is entitled to a new trial under the circumstances of this case. It is further

ORDERED that execution of this Court's writ shall be stayed for a period of sixty (60) days within which time, or such additional time as may be granted for good cause shown in writing before the expiration of the time stated, the State of Missouri may grant Carlos a new trial and commence such new trial for the offense involved in this case.