# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3990

_____

United States of America

*Plaintiff - Appellee*

v.

Dean Earl Wilkens

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 24, 2013
Filed: February 6, 2014

_____

Before LOKEN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Dean Earl Wilkens was convicted after a jury trial of four counts of aggravated sexual abuse. Following his conviction, the district court[1] sentenced Wilkens to 360 months imprisonment. Wilkens appeals, claiming the court committed numerous trial

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

errors and requesting the verdict be set aside and his conviction reversed or, in the alternative, that his sentence be vacated and the case remanded for a new trial. We affirm.

I.

In December 2011, a school social worker received an anonymous report that Wilkens was abusing a child residing in his home. At the time, Wilkens and his former wife, now known as Judith Jourdain, lived on the Red Lake Indian Reservation. Several children resided in their home, including the victims of the offenses of conviction, D.J. and T.J., who are Jourdain's biological grandchildren and Wilkens's step-grandchildren. L.B., a child involved in a count dismissed at trial, also resided in the home. L.B. is the biological grandchild of Jourdain and Wilkens. After receiving the information, the social worker interviewed D.J., who told her Wilkens had sexually abused her numerous times. The social worker reported D.J.'s disclosure to social services, and eventually the case was referred to the Family Advocacy Center of Northern Minnesota (FACNM), which provides forensic interviews and medical examinations of children. Nine of Jourdain and Wilkens's grandchildren residing in their home were sent for an evaluation at the FACNM. D.J., T.J., and L.B. all expressed in their interviews that Wilkens had sexually abused them.

Wilkens was charged with four counts of sexual assault and one count of abusive sexual conduct. Because the offenses occurred on the Red Lake Indian Reservation, he was charged with violating 18 U.S.C. §§ 1151; 1153(a); 2241(c); and 2246(2)(A), (B), and (C). The count involving L.B., Count 5, was dismissed by the Government during trial after seven-year-old L.B. was unable to adequately answer questions posed to her.

II.

Wilkens claims the trial court committed error by: (1) denying his motion to sever counts before and during trial; (2) excluding certain videotape evidence after his counsel focused on the evidence during closing argument; (3) striking Jourdain's testimony, including testimony of possible government threats made against her, after she invoked her Fifth Amendment right against self-incrimination; (4) sustaining relevancy objections to testimony regarding the victims' sexual abuse history; and (5) sustaining relevancy objections to evidence of a strained relationship between Wilkens and the victims' fathers. We address each in turn.

## A. Motion to Sever

First, Wilkens argues the district court abused its discretion in denying his motions to sever the counts both before and during the trial. The Federal Rules of Criminal Procedure permit separate offenses to be joined for trial when the offenses are "of the same or similar character." Fed. R. Crim. P. 8(a). A court may sever the counts for trial if the consolidation prejudices the defendant. Fed. R. Crim. P. 14(a). Severance is appropriate if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "We reverse a denial of a motion to sever only when the defendant shows an abuse of discretion that resulted in severe prejudice." United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995).

A magistrate judge recommended that Wilkens's pretrial motion to sever be denied because Wilkens had not demonstrated a joint trial would cause severe or compelling prejudice and because proof of all of the counts would nonetheless be admissible in separate trials. The trial court adopted the recommendation and denied the motion. After Count 5 was dismissed during trial, Wilkens moved again to sever

the remaining counts, and the court denied the motion. Wilkens now argues the jury could not make a reliable judgment about his guilt or innocence because the case, involving five counts, including one count dismissed during the trial, and three victims, was too complex for the jury to compartmentalize the evidence, and, thus, he was severely prejudiced.

We are not persuaded that Wilkens was severely prejudiced by the joinder of the offenses. "[A] defendant cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime." United States v. Brown, 653 F.3d 656, 662 (8th Cir. 2011) (internal quotation marks omitted). Although generally evidence of other crimes is not admissible to show the propensity to commit crimes, sexual assault is an exception. Under Federal Rule of Evidence 413, evidence of other sexual assaults by the defendant is admissible in sexual assault cases so long as the party meets certain disclosure requirements and the evidence is otherwise relevant. United States v. Tyndall, 263 F.3d 848, 850 (8th Cir. 2001). Because the evidence of the other counts would have been admissible in severed trials, Wilkens cannot show prejudice. See id.

Wilkens points to the witness's different versions of events and argues the counts should have been severed because it is unreasonable to assume that the jury would be able to separate the evidence. However, a jury will often hear multiple versions of the same events, and it "has the . . . responsibility to resolve conflicts or contradictions in testimony." United States v. Moya, 690 F.3d 944, 949 (8th Cir. 2012). After careful review of the record, we conclude there was little possibility the jury was confused over which evidence related to which count, and we are satisfied that the denial of severance did not deprive Wilkens of a fair trial. See United States v. Jones, 880 F.2d 55, 62 (8th Cir. 1989).

## B.  The Withdrawal of Exhibit #9

Next, Wilkens contends the trial court erred in withdrawing from evidence the videotaped interview of L.B. (Exhibit #9) after closing argument.  During trial, the Government introduced into evidence videotapes of the FACNM interviews of the three alleged victims.  D.J.'s and T.J.'s interviews were both played for the jury; Exhibit #9, the interview of L.B., was not played.  After Count 5 was dismissed, the Government indicated that its position was Exhibit #9 should be withdrawn. Defense counsel did not make an argument or give an opinion regarding its admissibility and the court did not at that time make a definitive ruling on the matter.  Defense counsel then focused on Exhibit #9 during closing argument, characterizing the interviewing techniques displayed in the video as leading and suggestive.  After closing arguments and after the jury retired for deliberations, the district court granted the Government's motion to withdraw Exhibit #9.  Though not specifically stated, it is apparent from the context of the motion to withdraw the exhibit that the court determined that the exhibit was either no longer relevant or only slightly probative after Count 5 was dismissed.  See Fed. R. Evid. 403(a)(1)(B).

A district court's decision to exclude evidence is reviewed for abuse of discretion.  United States v. Cook, 454 F.3d 938, 940 (8th Cir. 2006).  Although relevant evidence is admissible, Fed. R. Evid. 402, it may be excluded if the district court finds, in its discretion, that "its probative value is substantially outweighed" by the possibility of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.  Exhibit #9 was a videotaped interview of the alleged victim L.B., the only victim alleged in Count 5 of the indictment.  At the time Exhibit #9 was withdrawn from evidence, Count 5 had already been dismissed.

"[T]he district court [was] in a better position than we to evaluate the helpfulness of [the evidence] and to make the subtle balancing required by Fed. R.

Evid. 403." Hogan v. Am. Tel. & Tel. Co., 812 F.2d 409, 411 n.2 (8th Cir. 1987) (per curiam). Once Count 5 was dismissed, Exhibit #9 was marginally relevant at best. The decision of Wilkens's attorney to focus in closing argument on evidence that the court had already discussed dismissing does not make that evidence more relevant or probative to the counts before the jury. Even if it was relevant, the court did not abuse its discretion in finding that the evidence had the potential of confusing or misleading the jury since the content of the evidence related to the dismissed count.

## C.  Jourdain's Stricken Testimony

Wilkens also appeals the court's decision to strike Jourdain's testimony after she invoked her Fifth Amendment right against self incrimination. Jourdain testified for the defense on direct examination that D.J. told her she had fabricated the story of abuse. Defense counsel asked Jourdain if "anyone accused her of lying about that story." She responded that the Government's attorney had. She also responded in the affirmative when asked if "anyone ever threatened her with consequences if she came and testified." Immediately after giving this testimony, the Government objected and the jury was excused. The Government's attorney informed the court he had warned Jourdain of the possible consequences for her if she knew the sexual abuse was going on or if she told the children not to say anything about it. The court then appointed a public defender to advise Jourdain of her Fifth Amendment rights. After meeting with the public defender, Jourdain returned to the stand and invoked her right to remain silent. The court then struck all of her testimony and admonished the jury to disregard it.

Wilkens's argument concerning Jourdain's testimony is twofold:  (1) the testimony should have remained in evidence due to its content, and (2) the court erred

by not allowing the jury to hear the details of any threats made by the Government's attorney to determine whether the trial was tainted by prosecutorial misconduct.[2]

### i. Striking Testimony

A trial court's decision to strike a witness's testimony after the witness's assertion of the Fifth Amendment privilege against self incrimination is reviewed for an abuse of discretion, and "only in a case of abuse of such discretion resulting in obvious prejudice should an appellate court intervene." United States v. Brierly, 501 F.2d 1024, 1027 (8th Cir. 1974). The trial court has the duty to "exercise reasonable control over the mode . . . of examining witnesses and presenting evidence so as to [] make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). To provide a trial with a fair truth-seeking process, testimony should be stricken when its truth cannot be tested. See Smith v. United States, 331 F.2d 265, 277 (8th Cir. 1964). Direct testimony may remain on the record, even though the witness asserts the privilege against self-incrimination on cross-examination, if the Fifth Amendment is invoked on cross-examination as to the collateral matters rather than the details of the direct testimony. Brierly, 501 F.2d at 1027. Here, Jourdain's invocation of the Fifth Amendment did not occur on cross-examination, but during direct examination.

Wilkens argues the court erred in striking Jourdain's testimony because the court did not clarify the subjects as to which Jourdain wished to invoke her Fifth Amendment right. He suggests that Jourdain may have intended to invoke the right only as it relates to the threats, but she may have been willing to respond to questions

---

[2]In his reply brief, Wilkens attempts for the first time to argue that Jourdain waived her Fifth Amendment right against self incrimination by taking the stand to testify. "[W]e generally do not address issues and arguments asserted for the first time in a reply brief." Giove v. Stanko, 49 F.3d 1338, 1344 n.4 (8th Cir. 1995). We will not depart from our general rule in this case.

on cross-examination regarding D.J.'s credibility. Accordingly, had the court allowed Jourdain to answer questions on cross-examination concerning D.J.'s credibility, her direct testimony on the same subject could have remained on the record. We disagree. The court was within its discretion to determine that Jourdain's invocation of her Fifth Amendment rights included a refusal to answer questions on cross-examination. After meeting with her public defender, she took the stand and immediately invoked her Fifth Amendment right. The public defender informed the court that he would "have a hard time advising her to answer even questions selectively." Thus, we find the trial court did not abuse its discretion, and no prejudice resulted, by not requiring the Government to attempt cross-examination when it was clear Jourdain would not have responded.

Wilkens also argues Jourdain's testimony on direct examination concerning the fabrication of the abuse should have remained on the record because it went to credibility, regardless of her availability for cross-examination. He points to Brierly, where we noted a witness's direct testimony may remain on the record even when the witness asserts the privilege against self-incrimination when the witness refuses to give testimony on cross-examination concerning collateral matters or the witness's own credibility. 501 F.2d at 1027. Wilkens's argument misconstrues our holding in Brierly, which instructs that if "the witness—by invoking the privilege—precludes inquiry into the details of his direct testimony so that there is a substantial danger of prejudice, the direct testimony should be stricken in whole or in part." Id.; see also Coil v. United States, 343 F.2d 573, 580 (8th Cir. 1965). The details of Jourdain's testimony concerned whether D.J. fabricated her story. This testimony is not collateral matter and did not involve Jourdain's credibility. Since the details of her direct testimony were not at all subject to testing through cross-examination, the trial court did not abuse its wide discretion in striking the testimony. See id.; see also United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987) (striking testimony of defense witness when not subject to cross-examination by Government).

-8-

Finally, Wilkens argues that evidence of a predisposition to fabricate sexual abuse or assault should always be admitted unless its potential for unfair prejudice substantially outweighs its probative value. It is true that, under Federal Rule of Evidence 412, courts have found evidence tending to show a predisposition to fabricate rape can be admitted in some circumstances due to its probative value, even if it would otherwise be excluded under the Rule. Accord Stephens v. Miller, 13 F.3d 998, 1001-02 (7th Cir. 1994) (en banc). However, the trial court did not exclude this evidence under Rule 412, and Wilkens' argument fails to overcome the fact that Jourdain's testimony was not subjected to cross-examination.[3]

Thus, we conclude that the district court's decision in this case is a fair one and "promote[s] the development of evidence law[] to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102.

ii. Prosecutorial Misconduct

Wilkens further contends the trial court ignored prosecutorial misconduct by accepting the Government attorney's account of the conversation he had with Jourdain and refusing to allow the jury to hear the extent of any threats made against Jourdain. The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Burrage, 687 F.3d 1015, 1022 (8th Cir. 2012); United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir. 2011). The defendant may be prejudiced if the prosecutor made threats to a potential defense

_____

[3]Wilkens vaguely argues that excluding Jourdain's testimony violated his right to due process, to confront his accusers, and to offer evidence in his own defense. However, to provide a trial with a fair truth-seeking process, the testimony should be stricken when its truth cannot be tested. See Smith v. United States, 331 F.2d 265, 277 (8th Cir. 1964). Wilkens cites no cases holding otherwise.

witness.  United States v. Morrison, 535 F.2d 223, 227-28 (3d Cir. 1976) (holding that coercive threats during personal interview were impermissible); but see United States v. Simmons, 699 F.2d 1250, 1251-52 (D.C. Cir. 1983) (holding that a mere warning of the dangers of testifying was permissible).

Because Wilkens cannot show that any possible threats by the Government prejudiced him or denied him a fair trial, there was no error in the court not hearing the extent of the threats.  Jourdain, despite her conversation with the Government's attorney, took the witness stand and testified in a manner favorable to Wilkens.  It was Wilkens' attorney who led her into invoking the Fifth Amendment on direct examination.  Her decision to invoke the Fifth Amendment was not finalized until after she consulted with her own attorney, which further establishes that it was an independent, deliberate, and informed decision, rather than the result of any threats or coercion.  See United States v. Mahasin, 362 F.3d 1071, 1086-87 (8th Cir. 2004).

## D.  Sexual Abuse Evidence

Wilkens argues the court erred in sustaining relevancy objections to evidence that the victims had been sexually abused in the past by persons other than Wilkens.  Specifically, he argues that, by not hearing testimony of prior abuse, the jury assumed the only way the children could have acquired the arguably advanced sexual knowledge to which they testified was as a result of abuse from Wilkens.  Wilkens maintains, however, the victims' history of abuse serves as an alternative explanation for their sexual knowledge.

T.J. and D.J. testified in great detail regarding the abuse, arguably exhibiting sexual knowledge beyond their age.  Wilkens attempted to elicit testimony from two witnesses that the children had previously been abused by their fathers, to which relevancy objections by the Government were sustained.  The Government argued in closing that the only way the children could have known the level of sexual detail to

which they testified was if Wilkens had abused them.  Wilkens made no objection during closing argument and did not otherwise bring the issue before the trial court after the Government's closing argument.

Wilkens's contention is focused on the trial court's sustaining relevancy objections to two witnesses' testimony, Tammy Brummitt, L.B.'s mother, and Rena Parisien, a child protection case manager at Red Lake Family and Children Services. These witnesses both testified after Count 5 concerning L.B. had been dismissed. During direct examination of Brummitt, defense counsel asked whether she had ever reported "concerns that [L.B.'s father] had sexually abused any of the children that were in the house."  After the Government objected, defense counsel made an offer of proof that he had a note indicating Brummitt had reported that L.B. had been abused by her father.  Because any evidence would have involved possible abuse of L.B. and another child not involved in this prosecution, the court sustained the objection on relevancy grounds.  Wilkens also challenges the trial court's twice sustaining relevancy objections to Parisien's testimony.  The court first sustained a Government relevancy objection after an attempt to have Parisien elaborate about a conversation in which she heard "about [L.B.'s father] being abusive to [L.B.]."  The second relevancy objection was sustained after counsel asked Parisien whether "any other children indicated that they had been sexually touched by [L.B.'s father]."

The court did not err in sustaining relevancy objections to testimony concerning victims not involved in any remaining counts against Wilkens.  A district court is given "broad discretion" to determine the relevance of evidentiary matters. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885 (8th Cir. 2006).  We will reverse that decision only if there is a "clear abuse of discretion."  Suggs v. Stanley, 324 F.3d 672, 682 (8th Cir. 2003).  The trial court was within its wide discretion to find that evidence relating to whether a child uninvolved in the counts charged was previously abused by someone other than the defendant is irrelevant to the questions before the jury.

Wilkens only challenges one evidentiary ruling that might have related to victims actually involved in the counts remaining against Wilkens after Count 5 was dismissed. However, it is unclear whether the witness's testimony would have included information that T.J. or D.J. had been sexually abused because Wilkens did not attempt to make any offer of proof regarding the contents of the elicited testimony. In order to challenge a trial court's exclusion of evidence, an attorney must preserve the issue for appeal by making an offer of proof. Dupre v. Fru–Con Engineering Inc., 112 F.3d 329, 336 (8th Cir. 1997) (citing Holst v. Countryside Enters., Inc., 14 F.3d 1319, 1323 (8th Cir. 1994)). We will only consider an offer of proof that is contained in the record. See, e.g., Potts v. Benjamin, 882 F.2d 1320, 1323 (8th Cir. 1989) (concluding that party must put evidence on the record in order to challenge its exclusion on appeal). Because Wilkens did not make an offer of proof at trial concerning what Parisien would have testified to when asked whether "any of the other children indicated they had been sexually touched by [L.B.'s father]," we cannot evaluate which child, if any, Parisien may have had knowledge about. There were nine children from Wilkens and Jourdain's home sent to the FACNM, only two of which were involved in the counts against Wilkens. We cannot properly evaluate the trial court's decision to exclude the testimony as irrelevant without knowing what the excluded testimony would have been. In the absence of such an offer of proof, we have no basis in the record from which to conclude that the ruling affected a substantial right of the defendant. See, e.g., United States v. Seibel, 712 F.3d 1229, 1235 (8th Cir. 2013); Johnson v. Hill, 274 F.2d 110, 115 (8th Cir. 1960). Even if the issue was raised pre-trial,[4] it was incumbent upon Wilkens to make

_____

[4]Before trial, Wilkens filed a motion in limine relating to certain documents that may have contained information suggesting the victims had previously been abused by their fathers. The trial court stated that it would conduct an in camera review of the documents, and if they "become relevant and admissible—in that the Government does attempt to argue that one or more of the victims could not have known a particular level of sexual detail unless [Wilkens] abused them—the Court will provide the responsive documents to the defense." The documents involved in

an offer of proof at trial when faced with evidentiary rulings he now claims to be improper. United States v. Kirkie, 261 F.3d 761, 767 (8th Cir. 2001). Thus, the issue was not properly preserved for appeal, and there is no warrant for reversal on this claim of error.

## E. Strained Relationship

Finally, Wilkens contends that limiting evidence of his strained relationship with the victims' fathers was error. Wilkens argues this error denied him due process because he did not have a fair opportunity to offer evidence in his own defense or confront his accusers. The court sustained relevancy objections to questions concerning the strained relationship between Wilkens and the victims' fathers, including questions regarding the fact that Wilkens had previously reported the fathers to the police. Defense counsel offered that he intended to suggest the victims' fathers had a motive to fabricate allegations against him and they may have made the initial call regarding the abuse, spurring the investigation.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). Trial courts may exclude defense evidence on grounds the evidence is "repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues" without violating the Constitution. Id. at 326-27 (alterations omitted) (internal quotation

the motion in limine were never given to the defense attorney, and we see nothing in the record indicating he attempted to obtain these documents. The district court's tentative ruling on admissibility pre-trial was not final, and not sufficient to preserve any objections on appeal. See United States v. Big Eagle, 702 F.3d 1125, 1130 (8th Cir. 2013). Because no objection was made at trial concerning these documents, the district court was not called upon to exercise its discretion. Therefore, our review is limited to plain error, of which we find none. See id.

marks omitted). This attempt to link the fathers to the initial report of abuse due to a strained relationship is speculative evidence at best. Because the court has wide latitude to exclude evidence as irrelevant and speculative, the court did not abuse its discretion. See United States v. Rabins, 63 F.3d 721, 726 (8th Cir. 1995); see also United States v. Maestas, 554 F.2d 834, 837 n.2 (8th Cir. 1977) ("[E]vidence which is vague and speculative is not competent proof and should not be admitted into evidence."). The exclusion of such evidence was not an unreasonable application of evidentiary rules nor did it render Wilkens' trial fundamentally unfair.

The Confrontation Clause guarantees that a defendant has the ability to confront his accusers. Crawford v. Washington, 541 U.S. 36, 51 (2004). We understand Wilkens's argument to be that he was denied the opportunity to challenge the anonymous tip by indicating to the jury that the victims' fathers may have fabricated the tip. However, the excluded testimonial evidence is derived from the direct examination of his own witnesses who were not his accusers. In fact, there was no evidence admitted as to the identity of any anonymous accuser. Instead, the evidence presented at trial focused on information learned from a full investigation after the tip. Thus, the Confrontation Clause argument is misplaced as it does not involve confronting any "witnesses against him."

## F. Cumulative Effect

For his final challenge to his conviction, Wilkens argues that even if the alleged errors we have already discussed were harmless individually, their cumulative effect deprived him of a fair trial. Because we have not found multiple errors, harmless or otherwise, we must also reject this contention.

## III.

Accordingly, we affirm Wilkens's conviction.

_____