# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2546

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Walter Holliman, | * | Eastern District of Arkansas. |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2002

Filed: May 29, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Walter Holliman (Holliman) was convicted by a jury of aiding and abetting and conspiracy to transport stolen vehicles in interstate commerce in violation of 18 U.S.C. § 2312. The district court[1] sentenced Holliman to forty-six months in the custody of the Bureau of Prisons, three years of supervised release, and $51,165 in

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

restitution payments. Holliman appeals the district court's admission of evidence, refusal to grant a mistrial, and calculation of the sentence. We affirm.

## I. BACKGROUND

On January 5, 2000, following up on a tip that stolen four-wheel vehicle parts were located at Holliman's residence, police officers went to Holliman's home and asked Holliman's wife if they could search for the missing vehicle parts. Holliman's wife consented to a search of the outside area. While looking outside of the buildings for the stolen parts, the officers saw in plain view obvious evidence of a methamphetamine lab. Upon the officers' further request, Holliman's wife refused to give consent to search the inside of the buildings. Officer Peevler left an officer at the residence to keep it secure, proceeded to obtain a search warrant based upon the evidence of a methamphetamine lab, and returned to the residence shortly thereafter. While executing the search warrant, Officer Bass saw a 1010 Massey Ferguson tractor (1010) he believed had been reported stolen from Chrisman, Illinois, along with numerous other reportedly stolen vehicles and items. Officer Bass confiscated the 1010 in order to determine from the vehicle identification number whether the vehicle was actually stolen. The subsequent investigation determined the 1010 had been stolen in Arkansas.

Walter Holliman and his father, J.D. Holliman (J.D.), were indicted in federal court for organizing a theft ring involving four-wheelers, small tractors, and other small motorized vehicles. The indictment listed the serial numbers of thirteen vehicles alleged to have been stolen by the Hollimans. Two unindicted co-conspirators assisted the police in the investigation of Holliman and J.D. The testimony of these co-conspirators helped the police recover approximately forty vehicles taken as a part of the conspiracy and sold to unsuspecting buyers in Arkansas and in Indiana.

At trial, defense counsel elicited testimony from one of the unindicted co-conspirators that Holliman "indicated that he wanted to go to Arkansas but could not do so in his own vehicle. He was on probation." When the government later asked another unindicted co-conspirator what Holliman wanted him to "take care of down in Arkansas," and specifically asked: "Tell how that happened," the witness responded "[w]e had just discussed that we needed to get down here, and he couldn't leave the state because he was on a federal hold or something like that, probation." Holliman moved for a mistrial based upon the government's question and the district court denied the motion.

A jury found Holliman guilty on all counts charged in the indictment. The district court sentenced Holliman based upon a loss calculation of over forty vehicles proven to have been stolen during the conspiracy. Based upon both trial testimony assessing the value of the vehicles and evidence presented at the joint sentencing hearings of Holliman and J.D. on June 7 and 8, 2001, the district court assessed eight points for stolen property attributable to Holliman valued at between $70,000 and $120,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(I). This calculation was based not only upon the thirteen vehicles listed in the indictment, but also upon the value of additional vehicles stolen during the conspiracy.

The established value of the thirteen vehicles listed in the indictment alone was $69,777. With the inclusion of the value of the other vehicles stolen in the course of the conspiracy and testified to at trial, the value of the stolen property exceeded $70,000. At the sentencing hearings of Holliman and J.D., the government presented evidence of a loss calculation of $156,272 based upon the value of the thirteen vehicles listed in the indictment, and additional items either recovered from the Holliman property and returned to their owners or missing from victims. The district court declined to include loss from the resale of items that the government had used in its calculation. The district court concluded the amount of loss was "well within the range of the $70,000 to $120,000," because "there was information submitted by

-3-

the government in its motion and also at the time of trial from which . . . there is no doubt that the amount of loss is above 70,000."

## II.    DISCUSSION

Holliman argues the evidence of the 1010 found at his residence should have been suppressed.  He contends this evidence exceeded the scope of the search warrant, and therefore its seizure violated his Fourth Amendment rights.  Holliman asserts the government used a dragnet because as many as seventy-two items were seized, but the overt acts of the indictment only alleged Holliman stole three of these seized items.  Holliman overlooks the fact that his wife gave the officers consent to search the outside of the premises for the stolen four-wheeler parts.  Even if she had withdrawn her express consent to search, the officers were authorized to seize items in plain view not listed in the warrant as long as there was probable cause to believe the items were associated with criminal activity.  See United States. v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997).  Here the officers had probable cause to believe the 1010 was a tractor stolen from Chrisman, Illinois.  Id.  It was reasonable to seize the tractor temporarily to determine whether it was in fact stolen property.  Based upon the knowledge of the officers at the time and the incriminating character of all the other items, the officers had probable cause to believe all of the seized property was stolen, and the search was therefore reasonable.

Holliman argues the trial court abused its discretion in allowing evidence of other crimes, wrongs or acts under Rule 404(b) of the Federal Rules of Evidence and further improperly ignored Holliman's discovery request under Rule 16(a)(1)(c) of the Federal Rules of Criminal Procedure.  Holliman argues the testimony of the two unindicted co-conspirators concerning specific items of property stolen by the theft ring, but not explicitly listed in the indictment, was evidence of 'other wrongs' under Rule 404(b).  "[T]he trial court has broad discretion under [Rule 404(b)], and will be reversed only when the evidence clearly has no bearing upon any of the issues involved."  United States v. Perkins, 94 F.3d 429, 434 (8th Cir. 1996) (alteration in

original) (internal citations and internal quotation omitted). Here, the evidence presented by the co-conspirators did not concern "other crimes, wrongs, or acts" under Rule 404(b). The testimony of the co-conspirators concerned the very crime, conspiracy to transport stolen vehicles, for which Holliman was standing trial. The evidence of other vehicles stolen by the conspiracy was admissible under the doctrine of res gestae, as this evidence was sufficiently connected to the charged crimes that it tended logically to prove elements of these crimes. United States v. Riebold, 135 F.3d 1226, 1229 (8th Cir. 1998).

Even if this evidence were construed in some manner to be evidence of a prior bad act, outside the conspiracy, the evidence was also admissible as intrinsic evidence to show the full context of the crime charged and as "direct proof of a charged crime that includes a plan or scheme element" due to the proximity in time and ongoing nature of the theft ring at issue. United States v. Carroll, 207 F.3d 465, 468 (8th Cir. 2000). Furthermore, the district court gave a limiting instruction on this evidence. Holliman's related argument under Rule 16(a)(1)(c) of the Federal Rules of Criminal Procedure similarly lacks merit. The district court did not abuse its discretion with regard to this evidence.

Holliman argues the district court erred in not declaring a mistrial after a government witness testified that Holliman was on probation. We review a refusal to grant a mistrial for an abuse of discretion. United States v. Encee, 256 F.3d 852, 854 (8th Cir. 2001). In this case, Holliman's counsel had already elicited testimony from another witness that Holliman had been on probation. According to Holliman, the district court forced his counsel to make this offer by requiring a witness to read part of a prior statement that defense counsel was using to impeach the witness. However, defense counsel could have withdrawn his line of questioning. The district court's exercise of discretion to require the witness to read this statement was a reasonable request. The district court did not err in refusing to grant a mistrial.

Holliman's last argument is that the trial court erred in the assessment of the amount of stolen property for which Holliman was held responsible under the Sentencing Guidelines. Holliman asserts the loss calculation should have been based only upon the thirteen stolen vehicles listed in the indictment. Holliman's sentence must take into account "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A) & (B). The district court was correct in basing the loss calculation on all of the vehicles proven by a preponderance of the evidence to have been stolen as a part of the conspiracy and not only the thirteen vehicles listed in the overt acts of the indictment. Furthermore, the loss calculation need not be determined with precision; "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2B1.1, cmt. n3. Given the information available to the district court, the determination that the loss was between $70,000 and $120,000 was reasonable.

## III. CONCLUSION

Accordingly, having considered all of Holliman's contentions on appeal, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.