# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1089

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Edwin Shores

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2012
Filed: November 26, 2012

_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Mark Shores guilty of six counts related to firearms and possession of controlled substances with intent to distribute. After finding Shores was an armed career criminal under 18 U.S.C. § 924(e)(1), the district court[1]

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

sentenced Shores to 322 months' imprisonment. Shores appeals his convictions and sentence, and we affirm.

## I. Background

On September 16, 2009, law enforcement officers executed a search warrant at 3714 Melba Place in St. Louis. Four adults, including Mark Shores, were present in the home at the time. Officers seized 4.48 grams of cocaine base (crack), 2.38 grams of heroin, $2,740 in cash, and a variety of drug-related items including a coffee grinder and scales covered with heroin residue. The results of this search led to a federal arrest warrant, which officers executed at the same address on September 9, 2010. At the time of the arrest, Shores's wife consented to a search of the premises. Officers recovered a revolver and an additional 5.84 grams of heroin. Shores was charged with, and a jury found him guilty of, two counts of possessing heroin with intent to distribute, one count of possessing crack with intent to distribute, maintaining a drug-involved premises, being a felon in possession of a firearm, and possessing a firearm in furtherance of a drug trafficking crime.

The district court sentenced Shores to concurrent 240-month sentences for each of the drug-related offenses. Shores received another concurrent sentence of 262 months for being an armed career criminal in possession of a firearm. A mandatory consecutive term of 60 months' imprisonment was added pursuant to 18 U.S.C. § 924(c) because the possession of the firearm was in furtherance of a drug trafficking crime. In total, Shores received a sentence of 322 months' imprisonment.

## II. Discussion

### A. Alleged 404(b) evidence

Shores first argues reversal is warranted because the district court admitted evidence in violation of Federal Rule of Evidence 404(b), which allows evidence of

uncharged crimes, wrongs, or acts to be admitted for certain limited purposes, but only if the prosecution provides notice in advance of trial of its intent to use such evidence. During the trial Detective Anthony Boettigheimer—one of the officers who executed the search warrant at 3714 Melba Place on September 16, 2009—testified that on September 15, 2009, he had witnessed Shores participating in a hand-to-hand narcotics transaction outside of the same residence. Shores did not object to the admission of this evidence until just prior to closing arguments, when he argued that this testimony did not fall within one of the permissible Rule 404(b) purposes but instead was being introduced as substantive evidence of Shores's propensity to engage in drug trafficking activities. Shores further argued that even if the testimony was admissible under Rule 404(b), the Government had failed to provide the requisite notice of its intent to use such evidence in advance of trial. The Government concedes it did not provide notice of this testimony.

Although we ordinarily review a district court's decision to admit evidence for abuse of discretion, where a party has failed to make a timely objection, we will review only for plain error. *United States v. Elbert*, 561 F.3d 771, 775 (8th Cir. 2009). Shores did not make a timely objection because he did not object "at the earliest possible opportunity after the ground of objection be[came] apparent." *United States v. Carter*, 270 F.3d 731, 735 (8th Cir. 2001) (quoting *Terrell v. Poland*, 744 F.2d 637, 638-39 (8th Cir. 1984)). Therefore we review the admission of this testimony for plain error. *United States v. Simons*, 614 F.3d 475, 479 (8th Cir. 2010).

Here we find no error, much less plain error, because the testimony referred to charged conduct and therefore was not subject to Rule 404(b). *See United States v. Adams*, 604 F.3d 596, 599 (8th Cir. 2010). The hand-to-hand transaction occurred between Shores and a confidential informant ("CI") just outside of 3714 Melba Place on September 15, 2009. Count Three of the superseding indictment, "Maintaining a Drug Involved Premises," charges that "[o]n or about September 16, 2009," Shores "manage[d] and controll[ed] the premises of 3714 Melba Place . . . for the purpose of

-3-

unlawfully manufacturing, storing, distributing and using a controlled substance." Counts One and Two charged possession of controlled substances with intent to distribute likewise occurring "[o]n or about September 16, 2009." The "on or about" language in an indictment "relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified." *United States v. Youngman*, 481 F.3d 1015, 1019 (8th Cir. 2007) (quoting *United States v. Duke*, 940 F.2d 1113, 1120 (8th Cir. 1991)). Whether a defendant has "maintained" a drug-involved premises is a "fact-intensive issue," and requires more than a "defendant's mere presence during a police search of a residence." *United States v. Payton*, 636 F.3d 1027, 1043 (8th Cir. 2011). Shores's participation in this transaction outside of 3714 Melba Place the day before drugs were seized at the residence supports the inference that one of the purposes for which Shores maintained those premises during the relevant time period was the distribution of drugs. *See United States v. Holliman*, 291 F.3d 498, 502 (8th Cir. 2002). Similarly, testimony describing Shores's participation in a hand-to-hand transaction on September 15, 2009 also falls within the conduct charged in the two possession-with-intent-to-distribute charges. *Cf. United States v. Williams*, 165 F.3d 1193, 1195 (8th Cir. 1999) (holding that a witness's description of the defendant giving him methamphetamine in exchange for a car was admissible because it "relates to events occurring around the time period alleged in the superseding indictment" and tended to prove "an element of the offense of possession with intent to deliver methamphetamine"). We conclude that the evidence is part of the charged conduct and therefore not within the ambit of Rule 404(b). *See Holliman*, 291 F.3d at 501-02.

Moreover, even if the September 15 hand-to-hand transaction was not part of the charged conduct, we conclude that Rule 404(b) would not bar this testimony because it is "sufficiently intertwined" with the charged offenses. *United States v. Molina*, 172 F.3d 1048, 1055 (8th Cir. 1999) ("It is well established that where evidence of another crime is so intertwined with the offense of conviction that proof of one incidentally involves the other or explains the circumstances of the other, it

is . . . not governed by Rule 404(b)." (internal citation omitted)).  In *Molina*, we upheld the admission of testimony by an officer regarding a controlled buy from the defendant, even though this buy was not included in the charged conduct.  The initial controlled buy was intrinsic to the charged conduct because it "provided the police with a portion of the probable cause that allowed the officers to obtain a [search] warrant."  *Id.*  Just as the testimony in *Molina* explained the source of the probable cause, the testimony regarding the hand-to-hand transaction formed a critical component of the officer's basis for obtaining the warrant to search Shores's residence and therefore was also intrinsic evidence.  Thus, the district court did not commit plain error in admitting this evidence.

### B. Employment status testimony

Shores next argues the Government violated Federal Rule of Criminal Procedure 16(a)(1)(A), which requires the government to disclose to the defendant upon his request the substance of any "oral statements made by defendant 'in response to interrogation by any person then known to the defendant to be a government agent.'" *United States v. Hoelscher*, 914 F.2d 1527, 1535 (8th Cir. 1990) (quoting *United States v. Vitale*, 728 F.2d 1090, 1093-94 (8th Cir. 1984)).  Shores submitted a Rule 16 request, and the Government did turn over materials to him pursuant to this request.  Nonetheless, Shores contends that the Government did not comply with its responsibilities under Rule 16 when it failed to disclose a statement Shores made to Detective Boettigheimer during the search of 3714 Melba Place on September 16, 2009.  Shores had indicated to Detective Boettigheimer that he was unemployed, and the detective repeated this statement at trial.  In response to Shores's objection, the district court told the Government to move on but did not strike the testimony.  We review the district court's evidentiary rulings for abuse of discretion. *United States v. Shillingstad,* 632 F.3d 1031, 1034 (8th Cir. 2011).  An "abuse of discretion exists only if prior nondisclosure of the evidence prejudiced the substantial rights of the defendant."  *United States v. Williams*, 902 F.2d 675, 677 (8th Cir.

1990). In this context, a defendant's rights are substantially prejudiced if it is "reasonably probable that the result of the trial would have been different" had the evidence been disclosed. *United States v. Ben M. Hogan Co., Inc.*, 769 F.2d 1293, 1301 (8th Cir. 1985), *vacated on other grounds*, 478 U.S. 1016 (1986).

Shores argues the admission of his statement regarding his lack of employment seriously harmed his planned defense to portray the $2,740 found in a trash can in his home as nothing more than a rudimentary bank account. Shores also claims that the lack of notice harmed his ability accurately to gauge the value of going to trial over accepting a plea bargain. The Government claims that it effectively gave Shores notice when it provided him with a copy of the face sheet from the applicable law enforcement incident report. The face sheet identifies Shores as "unemployed," even though the source of this information is not specifically identified. Regardless of whether this face sheet is sufficient to constitute disclosure of a prior statement made by the defendant, admission of this testimony does not rise to the level of reversible error.

First, the testimony was cumulative of other evidence introduced by the Government tending to show that Shores was unemployed. A CI who testified to purchasing heroin from Shores over the course of many months answered "no" when asked if he had "ever know[n] [Shores] to hold a job." The admission of substantively similar evidence through another witness blunts any possible prejudice. *United States v. Brown*, 871 F.2d 80, 82 (8th Cir. 1989) ("The statement [admitted in violation of Rule 16(a)(1)(A)] was not critical to the government's case because other testimony established [the fact at issue]."); *see also Williams*, 902 F.2d at 677.

Second, the undisclosed statement regarding Shores's employment status went to an ancillary aspect of his defense strategy, and Shores's attempt to provide an innocuous account of the cash in his garbage can is implausible when viewed against the backdrop of the substantial evidence of his guilt. *See United States v. Barrera*,

628 F.3d 1004, 1009 (8th Cir. 2011). After receiving a tip from the CI that Shores was involved "with drugs and guns," Detective Boettigheimer went to 3714 Melba Place and observed Shores participating in a hand-to-hand transaction in front of the residence. When the officer executed a search warrant there the next day, he found Shores sitting at the kitchen table. Alongside Shores in the kitchen were a variety of tools and implements associated with drug distribution, such as a coffee grinder and scales (both covered with heroin residue), latex and vinyl gloves, razor blades, surgical masks, and Dormin (a chemical commonly mixed with heroin). Close at hand in the dining room, the police found heroin and crack packaged for distribution. When the police arrested Shores at the same residence one year later, they found him sleeping in a bedroom. A nearby dresser contained a loaded .38-caliber revolver and two plastic bags containing heroin. In light of this other evidence connecting Shores to the drugs found at the home, there is no reasonable probability that the outcome of the trial would have been different if the evidence of his lack of employment had not been admitted. *See United States v. Jeanpierre*, 636 F.3d 416, 424 (8th Cir. 2011). Finally, the argument that Shores may have opted to accept a government plea bargain had this statement been more explicitly disclosed is too speculative to warrant a finding of prejudice. *See United States v. Clark*, 385 F.3d 609, 620 (6th Cir. 2004); *cf. Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

### C. Evidence of dangerousness of heroin

During the direct examination of Detective Edward Clay, the Government inquired as to the "level of dangerousness" of heroin. The officer responded by first characterizing heroin as the "most dangerous" street drug and then citing the large number of recent heroin-related deaths. Immediately, Shores objected to the testimony based on Rule 403. Shores contends that the district court instructed the jury to disregard the testimony regarding the heroin-related deaths but implicitly allowed the characterization of heroin as the most dangerous street drug to stand. The final jury instructions contained a general reminder to the jury to disregard any

testimony stricken from the record. Shores insists he was unfairly prejudiced by the inflammatory nature of this testimony.

The typical cure for a violation of Rule 403 is to strike the testimony and provide appropriate instructions to the jury. *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008). "It is generally within the discretion of the district court to decide whether the fairness of a trial has been compromised," *id.*, and we are reluctant to find unfair prejudice where the district court provided a cautionary instruction. *United States v. Zierke*, 618 F.3d 755, 759 (8th Cir. 2010). The district court made clear to the jury that heroin deaths were not a relevant consideration in this case. Particularly given the substantial evidence of guilt submitted by the Government, the limited prejudicial effect of this testimony does not warrant a new trial. *See United States v. Gettel*, 474 F.3d 1081, 1088 (8th Cir. 2007) (finding that although "the risk of prejudice was not insignificant, it was adequately diminished by the District Court's cautionary instruction"); *United States v. Sherman*, 440 F.3d 982, 988 (8th Cir. 2006) (finding that "the exposure of a jury to improper testimony" was cured by a prompt instruction to disregard the statements, especially given "the context of the entire trial, which provided substantial evidence" of the defendant's guilt).

Even if it would have been reasonable for the district court also to strike Detective Clay's reference to heroin's comparative dangerousness, we will not reverse a conviction if the error was harmless. *United States v. Donnell*, 596 F.3d 913, 919 (8th Cir. 2010). The court's failure to strike this portion of Detective Clay's testimony was harmless error because the testimony was incapable of having "a substantial influence on the jury's verdict." *United States v. Smith*, 591 F.3d 974, 979 (8th Cir. 2010) (quoting *United States v. Haskell*, 468 F.3d 1064, 1074 (8th Cir. 2006)). The jury knew heroin to be an illegal drug and so likely had some awareness it was a dangerous substance. Even if the jury believed heroin to be the most dangerous street drug, "such a belief would not make the other evidence of [Shores's]

guilt more credible or less credible," which mitigates the impact of the testimony. *United States v. Lupino*, 301 F.3d 642, 647 (8th Cir. 2002). Furthermore, any assertion that the connection between heroin use and high fatalities inappropriately influenced the jury is belied by the jury's acquittal on count Four, which charged possession of heroin on April 7, 2010 with intent to distribute.

### D. Confrontation Clause

Shores next argues the Government violated his Sixth Amendment Confrontation Clause rights because he did not have an opportunity to cross-examine the CI whom Detective Boettigheimer identified as the source of the initial tip that Shores was involved "with drugs and guns." The Sixth Amendment secures the right of an accused "to be confronted with the witnesses against him." This protection serves to bar the introduction of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). The CI's statement clearly falls within the type of out-of-court statement categorized as "testimonial." *See Michigan v. Bryant*, 562 U.S.---, 131 S. Ct. 1143, 1155 (2011). Where an out-of-court statement is offered not for the truth of the matter asserted but rather "to explain the reasons for or propriety of a police investigation," then it is not hearsay and does not implicate the Confrontation Clause. *United States v. Malik*, 345 F.3d 999, 1001 (8th Cir. 2003) (quoting *United States v. Davis*, 154 F.3d 772, 778 (8th Cir. 1998)). However, such statements will only be considered context for the investigation—and thus outside the realm of hearsay—if "the propriety of the investigation is at issue in the trial." *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010).

Shores insists he bypassed any criticism of the propriety of the investigation because he conceded the validity of the search warrant under which the drugs were seized. Nevertheless, the propriety of an investigation encompasses more than the validity of a search warrant. From the early moments of the trial, it was clear that Shores would be premising his defense on the theory that he was a victim of

government targeting. Shores undeniably called into question the propriety of the investigation during his opening statement when his counsel asked the jury to reflect upon why "Shores [was] the one person taken away that day," despite the presence of three other adults in the home when the drugs were seized. The challenged statement was offered "only to show why the officers conducted their investigation in the way they did," namely by focusing their attention on Shores. *See United States v. Brooks*, 645 F.3d 971, 977 (8th Cir. 2011). Therefore, the district court did not abuse its discretion in admitting this evidence.

### E. Jury Instruction No. 20

Shores asserts that Instruction No. 20, which set forth factors for the jury to consider when determining whether Shores had the intent to distribute the controlled substances he possessed, improperly bolstered the testimony of Detective Clay. We review jury instructions for abuse of discretion, and "must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *United States v. Dvorak*, 617 F.3d 1017, 1024 (8th Cir. 2010) (quoting *United States v. Beckman*, 222 F.3d 512, 520 (8th Cir. 2000)). As long as the jury instructions "properly informed the jury of the law to be applied to the case," then the district court did not abuse its discretion. *United States v. Ryder*, 414 F.3d 908, 917 (8th Cir. 2005).

Detective Clay testified as to why the circumstances in which the drugs were found in 3714 Melba Place reflected Shores's intent to distribute them. In particular, he cited the quantity and packaging of heroin, the absence of any drug-ingestion paraphernalia, and the presence of multiple types of drugs and certain tools that would facilitate distribution, such as scales. By comparison, Instruction No. 20 stated:

In determining a person's intent to distribute a controlled substance, the jury may consider, among other things, the quantity of the controlled substance; the manner in which the controlled substance was packaged; the presence of items indicative of distribution including scales, grinders, packaging materials, cutting agents; the street value of the controlled substance; the presence of a firearm; and any cash discovered with the controlled substance. The government must prove beyond a reasonable doubt that the defendant intended to distribute the controlled substance alleged in the indictment.

According to Shores, Instruction No. 20 did not fairly submit the issue to the jury because the formulation implicitly endorsed Detective Clay's testimony by mirroring the factors he relied upon when describing the basis for his opinion.

To the extent there is overlap, it is hardly surprising that Detective Clay's presentation, like the jury instruction, would focus on the types of circumstantial evidence previously identified as sufficient to support a finding of intent to distribute. *See, e.g.*, *United States v. McClellon*, 578 F.3d 846, 856 (8th Cir. 2009) (mentioning drug quantity, packaging, drug paraphernalia, and presence of cash, firearms, or tools such as a scale); *United States v. Boyd*, 180 F.3d 967, 980 (8th Cir. 1999). Furthermore, in recent decisions we have affirmed substantially similar jury instructions regarding intent to distribute. *See United States v. Thompson*, 686 F.3d 575, 579 (8th Cir. 2012); *United States v. Parish*, 606 F.3d 480, 488-89 (8th Cir. 2010). Instruction No. 20 accurately reflects the law to be applied, and therefore we find no abuse of discretion.

**F. Sentencing**

Shores raises two challenges to his sentence of 322 months' imprisonment. Because he did not present a timely objection as to either, we review for plain error. *United States v. Nissen*, 666 F.3d 486, 490 (8th Cir. 2012). To obtain relief from the sentence under this standard of review, Shores must show an error that is both plain

-11-

and affects his substantial rights, and the error must be of a type that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See id.* He argues first that the district court committed a procedural error when it failed to give adequate consideration to all of the sentencing factors set forth in 18 U.S.C. § 3553(a), and second that application of the enhanced mandatory minimum sentence violated his Sixth Amendment rights.

When reviewing a sentence, we must "ensure that the district court committed no significant procedural error, such as . . . failing to consider the [18 U.S.C.] § 3553(a) factors." *United States v. Buesing*, 615 F.3d 971, 974-75 (8th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Shores argues that the district court erred by not crediting the relatively small amounts of heroin and cocaine found at 3714 Melba Place as compared to other cases involving possession with intent to distribute. The district court informed Shores that regardless of whether he was "a major drug dealer or not, [that] really doesn't factor into the calculation[,] . . . . it really doesn't help very much to compare you to people at other ends of the spectrum." Under Shores's theory, the district court thereby failed to consider § 3553(a)(1), which requires the sentencing court to take into account "the nature and circumstances of the offense," and § 3553(a)(6), which refers to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Shores also contends the district court ignored § 3553(a)(2)(B) and (C), which address the need to achieve adequate deterrence and protect the public from further crimes, because a sentence of 322 months for the fifty-one-year-old Shores is effectively an unwarranted life sentence for a relatively small amount of drugs.

A district court need not quote verbatim all of the factors listed in § 3553(a). *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009). Instead, a district court can generally demonstrate its consideration of the factors by referring to some of the statute's relevant considerations. *United States v. Gray*, 533 F.3d 942, 944 (8th Cir.

-12-

2008). In this case, the district court considered the particular quantities of controlled substances found in Shores's possession. The district court noted that its decision addressed the sentencing goals of "punishment, deterrence, and incapacitation," and we have found this type of reference to § 3553(a)'s sentencing objectives to be sufficient to indicate consideration of the requisite statutory provisions. *See United States v. Bryant*, 606 F.3d 912, 919 (8th Cir. 2010). Although the district court did not explicitly mention Shores's age, it is not required to "specifically respond to every argument made by the defendant." *United States v. Struzik*, 572 F.3d 484, 487 (8th Cir. 2009). The court did refer more generally to Shores's history, characteristics, and the information presented in the Presentence Report, and we are satisfied the district court fully considered all mitigating and aggravating factors at issue.[2] *See id.*

Finally, Shores argues that the district court violated his Sixth Amendment right to have a jury find any fact that increases his sentence when it found that he had three qualifying prior convictions for purposes of the Armed Career Criminal Act. A jury is not required, however, to find the "fact" of a prior conviction, and accordingly we reject Shores's argument. *See, e.g.*, *United States v. Campbell*, 270 F.3d 702, 708 (8th Cir. 2001).

For the foregoing reasons, we affirm Shores's convictions and sentence.

———————————————

[2]To the extent Shores also implies that the failure to consider or give appropriate weight to the § 3553(a) factors led to a substantively unreasonable sentence, we note that a term of 322 months' imprisonment was at the bottom of the applicable Guidelines range. A "within-Guidelines sentence is presumptively reasonable on appeal," *United States v. Borromeo*, 657 F.3d 754, 756 (8th Cir. 2011), and Shores has not presented us with any reasons to deviate from this presumption.