# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 11-3754

———————————————

United States of America

*Plaintiff - Appellee*

v.

Duane Dale Big Eagle

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Pierre

——————————

Submitted: October 19, 2012
Filed: January 10, 2013

——————————

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

——————————

RILEY, Chief Judge.

A jury convicted Duane Big Eagle of conspiracy to commit bribery of an Indian tribal official, and aiding and abetting a bribery involving an agent of an Indian tribal government, in violation of 18 U.S.C. §§ 371, 666(a), and 2. The district court[1]

———————————

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

sentenced Big Eagle to concurrent 36-month terms of imprisonment. Big Eagle raises evidentiary challenges on appeal. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND
### A.    Facts
#### 1.    Kickback Scheme

From 2002 through 2006,[2] Big Eagle was the elected chairman of the Crow Creek Sioux Tribe (tribe), a federally recognized Indian tribe headquartered in Ft. Thompson, South Dakota. While Big Eagle was chairman, and also at other times, Big Eagle and other tribal council members accepted bribes from construction contractors in exchange for lucrative contracts from the tribe.

In April of 2005, the Crow Creek Sioux Tribal School (school), a residential boarding school in Stephan, South Dakota, operated by the tribe and funded substantially with federal grant money, caught fire—twice within four days. The fires caused extensive damage to a student dormitory and the kitchen. The tribe received insurance money and grants from the Bureau of Indian Affairs (BIA) to pay for repairs. The tribal council and the BIA authorized Scott Raue, the school's administrator, to accept no-bid and sole-source contracts in order to expedite the repairs. Raue and the school board selected contractors who were willing to pay kickbacks to receive these contracts. The basic bribery scheme was simple—Raue accepted inflated invoices from contractors, and the contractors would split the excess payments with Raue. Raue shared these illicit kickbacks with Big Eagle and with council members Norman Thompson and Randy Shields. Raue gave money directly to Big Eagle on "[w]ay more than two occasions."

---

[2]Big Eagle also served as tribal chairman from 1978 through 1981, 1992 through 1998, and 2010 through 2011.

### 2. Kutz

Royal Kutz was a construction contractor who worked for the tribe on the school repair project. Raue asked Kutz for kickbacks approximately four times, and Kutz acquiesced. Sometimes Kutz paid Raue directly in cash. Other times, Kutz would leave cash on a bucket in Kutz's garage for Raue to pick up. Kutz believed the money was for Raue, and Raue never indicated to Kutz the money was to be distributed to Big Eagle or the other council members.

In 2004, Thompson told Raue that Kutz was out of favor with the tribal council, and Raue should no longer permit Kutz to work at the school. Big Eagle met with Kutz to resolve the situation and convinced Kutz to continue working at the school. After this, Kutz continued to pay bribes to Raue in connection with Kutz's work at the school.

### 3. McClatchey

Craig McClatchey was an architect who contracted for the tribe, starting in January 2002. In June 2002, Raue began asking McClatchey for loans. McClatchey was not comfortable with the request, but agreed to loan Raue $2,000 upon Raue's promise to pay the loan back and in order to maintain amicable relations with the tribe. Eventually, Raue informed McClatchey that Raue would not repay the loan, and "the Tribal chairman" wanted McClatchey to pay kickbacks on the payments McClatchey received from the tribe. Initially, McClatchey resisted making these payments, but ultimately acquiesced. Between June 2002 and April 2005, McClatchey paid Raue between $80,000 and $120,000 in kickbacks.

After the April 2005 dormitory fire, Rick Hahn, another contractor, asked McClatchey to participate in the school project. Not wanting to deal directly with the tribe because of the kickbacks, McClatchey asked Hahn to "administer" the contract, and Hahn agreed. McClatchey believed under this arrangement he would not be pressured to pay additional kickbacks.

McClatchey's only meeting with Big Eagle took place in a restaurant in Pierre, South Dakota. McClatchey traveled with his daughter to Pierre for an informal lunch meeting with Raue and Hahn. During the meeting, Big Eagle came into the restaurant and was introduced to McClatchey. Big Eagle said, "Hi," and then walked around the lunch table to stand directly behind McClatchey's daughter, facing McClatchey. Big Eagle put his hands on McClatchey's daughter's shoulder, looked McClatchey directly in the eyes, and said, "You're going to play ball with us, aren't you, Craig?"

### 4. Bauman

Archie Bauman also contracted with the tribe to perform construction services after the fire. In June of 2008, Thompson and Shields asked Bauman to provide a short-term loan to the tribe. Bauman resisted because the tribe owed Bauman money. Bauman eventually loaned the tribe $160,000, and made several personal loans to Thompson, Shields, and council chairman Brandon Suaze. In July 2008, the tribe repaid the $160,000 loan, plus $49,271 in interest. Between June and October 2008, Bauman made additional loans to the tribe and tribal council members, most notably a $50,000 loan to the tribe in August 2008. During this period, Bauman signed a contract with the tribe to construct teacher housing on the school property.

On October 21, 2008, Bauman met with Raue, Thompson, Shields, Big Eagle, Suaze, and former council member Rocky Fallis at Bauman's office. They discussed how the tribe and individual council members could repay the Bauman loans. The men knew the tribal council members were under federal investigation for corruption and believed if the loans were not repaid the investigators would believe them to be illegal kickbacks. At this meeting, Big Eagle, Shields, and Thompson pressured Bauman for an additional $5,000 loan. Bauman decided it would be best to give the money to Big Eagle because Big Eagle was not serving on the tribal council at that time. It was understood by Bauman that Big Eagle would distribute the money to the other men, to hide the source of the funds. Thompson wrote a $5,000 check to Big

Eagle. Unbeknownst to the participants at this meeting, Suaze was cooperating with law enforcement and surreptitiously recorded the meeting.

## B.    Procedural History

On October 13, 2010, a grand jury indicted Big Eagle on two counts of conspiracy to commit bribery of a tribal official, in violation of 18 U.S.C. § 371, and two counts of bribery involving an agent of an Indian tribal government, in violation of 18 U.S.C. §§ 666(a) and 2. Counts I and II of the indictment related to Big Eagle's alleged conspiracy to solicit and acceptance of a bribe from Kutz in December of 2005. Counts III and IV of the indictment related to Big Eagle's alleged conspiracy to solicit and acceptance of a bribe from Bauman in October 2008.

Before trial, Big Eagle moved to exclude "[a]ny evidence of uncharged crimes or bad acts," specifically, evidence contractors other than Bauman and Kutz paid bribes to the conspirators, because the government failed to provide Big Eagle with pretrial notice of its intent to use such evidence, as required by Fed. R. of Evid. 404(b)(2). Big Eagle also moved to exclude "[a]ny testimony of Craig McClatchey." The district court held a hearing on this motion. At the hearing, the district court announced

> The Court's inclined to allow the government to put on evidence of bribes solicited by Raue—or taken by Raue from not only those specifically named in the Indictment, that is, Kutz, but also those similarly positioned, because the Indictment does clearly allege a conspiracy relating to the Crow Creek tribal schools.
>
> . . . .
>
> The government has said it's not going to put in evidence that McClatchey had his 11-year-old daughter [at the meeting with Big Eagle] and that a statement that McClatchey maybe perceived as a threat on his daughter occurred. That's—that's not going to come in. The

-5-

statement seems like it should come in; but the context where one person might think it a threat involving a child, that's not going to come in.

. . . .

The Court is mindful of its desire to provide some certainty to counsel; but, again, we're dealing with an area and a situation where the Court has heard no testimony.

. . . .

The Court's inclination is to grant the motion in limine only to the extent of prohibiting Mr. McClatchey from testimony about Mr. Big Eagle's comments being some threat to his daughter.

. . . .

So that is the preliminary ruling of the Court. The Court will make further rulings on objections as the case progresses.

The government proposed that Big Eagle offer an instruction cautioning the jury only to consider the evidence for permissible purposes, but Big Eagle refused, arguing a limiting instruction would not be appropriate.

At trial, Raue testified that, when selecting contractors for work at the school, Raue favored contractors with a history of paying bribes, and that Raue shared bribes with Big Eagle on multiple occasions. Additionally, McClatchey testified Raue solicited kickbacks from McClatchey, and Raue told McClatchey "the tribal chairman" had insisted on the kickbacks. Big Eagle did not object to this testimony.

The government also offered testimony concerning the meeting between McClatchey and Big Eagle. On direct examination, McClatchey testified his daughter had been present at the meeting, Big Eagle stood behind McClatchey's daughter, and

Big Eagle asked if McClatchey was "going to play ball with us." On cross-examination, Big Eagle's attorney asked McClatchey to clarify his testimony regarding the encounter: "Your recollection is that he said, 'Hi. Nice to meet you. Are you going to play ball with us, . . . Craig?'" McClatchey responded:

> Not exactly like that. What—he said, "Hi. Nice to meet you." And he waited a few moments. And then, like I said, he walked behind my daughter and put his hands on her shoulders and looked straight at me and said, "Now, you're going to play ball with us, aren't you, Craig?" And that's all he said.

Big Eagle did not object to the response, move to strike the response, ask for a cautionary jury instruction, or move for a mistrial. Instead, Big Eagle challenged McClatchey's memory with this exchange:

Q:     And your memory is so keen that you recalled the verbatim statement that [Big Eagle] made to you; is that right?

A:     Not on everything, but on this particular item, yes, sir.

At closing, Big Eagle's lawyer, recalling the restaurant conversation with McClatchey's daughter present, suggested McClatchey's testimony was not credible—"It doesn't make any sense." The government, in rebuttal, responded: "when the chairman put his hands on [McClatchey's] daughter's shoulders and looked him in the eye and said, 'You are going to play ball with us, aren't you, Craig?' that's something that would stick with you."

The jury convicted Big Eagle of Counts I, III, and IV, and the district court sentenced Big Eagle to concurrent 36-month terms of imprisonment. Big Eagle appeals the district court's denial of his motion in limine regarding uncharged crimes evidence and the admission of McClatchey's testimony regarding Big Eagle's statements in the presence of McClatchey's daughter.

## II.     DISCUSSION

### A.     Standard of Review

Ordinarily we review for abuse of discretion the district court's rulings regarding the admission of evidence. See United States v. Shores, 700 F.3d 366, 370 (8th Cir. 2012). If a party fails to raise a timely objection, our review is limited to plain error. See id. Under plain error review, Big Eagle must show "that the district court committed an error that is clear or obvious, that the error affected his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Troyer, 677 F.3d 356, 358-59 (8th Cir. 2012).

### B.     Motion in Limine

Under the Federal Rules of Evidence, "[o]nce the court rules definitively on the record" concerning a party's in limine objection to admission of evidence, "a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). We must decide in this case whether Big Eagle's pretrial objections, in light of the district court's rulings, sufficiently preserved his evidentiary challenges on appeal.

The district court's tentative ruling on the admissibility of uncharged crimes evidence was not final, and not sufficient to preserve Big Eagle's objections on appeal. The district court explicitly stated the ruling was "preliminary," noted the court had not heard the evidence the government intended to present, and emphasized the court would "make further rulings on objections as the case progresses." Taken in context, it is clear the district court did not intend this ruling to be definitive, but intended to address Big Eagle's concerns in light of the evidence the government offered at trial, subject to Big Eagle's specific objections to such evidence. Big Eagle's failure to object at trial limits our review of these challenges to plain error. See Shores, 700 F.3d at 370.

Testimony concerning Big Eagle's statements in the presence of McClatchey's young daughter presents a closer question. The district court expressed its "inclination . . . to grant the motion in limine only to the extent of prohibiting Mr. McClatchey from testimony about Mr. Big Eagle's comments being some threat to his daughter." The district court's pretrial ruling was more unclear regarding whether McClatchey could testify about his daughter being present at the meeting. When McClatchey volunteered this information at trial, McClatchey never testified he perceived Big Eagle's words and actions as a threat, and neither Big Eagle nor the government raised any objection or requested a limiting instruction regarding McClatchey's answers. On cross-examination, Big Eagle revisited the same testimony, giving McClatchey a second opportunity to relate the conversation. Cf. United States v. Huerta-Orosco, 340 F.3d 601, 604 (8th Cir. 2003) (observing "'a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted'" (quoting Ohler v. United States, 529 U.S. 753, 755 (2000))).

Because no objection was made, the district court was not called upon to exercise its discretion. Therefore, our review is limited to plain error.

## C.    Intrinsic or Extrinsic Evidence

Big Eagle argues the district court erred in determining evidence relating to uncharged bribery activity was "intrinsic" to the charged conspiracy and therefore admissible notwithstanding the government's failure to give Big Eagle pretrial notice of its intent to use this evidence.

Under Rule 404(b), the government may, in certain circumstances, introduce evidence of "crimes, wrongs, or other acts" committed by the defendant. Rule 404(b) requires the government to provide the defendant with pretrial notice of the "general nature" of such evidence the government intends to use at trial. See United States v. Clarke, 564 F.3d 949, 957 (8th Cir. 2009). However, "'where evidence of another crime is so intertwined with the offense of conviction that proof of one incidentally

involves the other or explains the circumstances of the other, it is . . . not governed by Rule 404(b).'" Shores, 700 F.3d at 371 (quoting United States v. Molina, 172 F.3d 1048, 1055 (8th Cir. 1999)). This evidence is admissible because it "completes the story or provides a total picture of the charged crime." United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (quoting United States v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996)) (internal quotation marks omitted).

We considered "intrinsic" evidence of a kickback operation in Johnson, 463 F.3d at 805, 808. Johnson, a state social services worker, fraudulently issued public assistance checks to unqualified individuals in exchange for kickbacks. See id. at 805-06. The government charged Johnson with mail fraud relating to three fraudulent transactions, but the government produced evidence of numerous other fraudulent transactions. See id. at 806-07. Johnson argued the evidence was not admissible under Rule 404(b). See id. at 807. We rejected Johnson's argument, finding the evidence intrinsic to the conspiracy because it was necessary to establish Johnson's motive to issue fraudulent checks and therefore was an "inextricable part of the government's case." Id. at 808.

The instant case is similar to Johnson. The government alleged Big Eagle conspired to receive kickbacks from Bauman and Kutz, and the testimony of Raue and McClatchey regarding other kickbacks was necessary to explain the relationship, motives, and scheme among Big Eagle, Raue, the other council members, and the contractors making kickback payments. It is neither "clear" nor "obvious" the district court erred in admitting this evidence in light of Johnson. Cf. Troyer, 677 F.3d at 358. Big Eagle fails to establish plain error.

### D.    McClatchey's Testimony
Big Eagle further contends the district court erred in permitting McClatchey to testify regarding Big Eagle's statement at the meeting between McClatchey and Big Eagle. Big Eagle also challenges the government's entry into evidence,

purportedly contrary to the district court's ruling, of the circumstances indicating Big Eagle's statement may have been a threat against McClatchey's daughter.

With respect to Big Eagle's statement to McClatchey, Big Eagle declined the government's pretrial offer of a limiting instruction. Therefore, Big Eagle waived his right to challenge the admission of the evidence to the extent any unfair prejudice would have been alleviated by a curative instruction. See United States v. Petrovic, ___ F.3d ___, ___, 2012 WL 6197499, at *6 (8th Cir. Dec. 13, 2012). "[A] cautionary instruction [is] generally sufficient to alleviate prejudice" stemming from improperly admitted evidence. United States v. Diaz-Pellegaud, 666 F.3d 492, 503 (8th Cir. 2012). Where such an instruction is given or waived, we "will affirm a conviction where there was substantial evidence of guilt." Id. (quoting United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005)) (internal marks omitted). In Big Eagle's case, substantial evidence confirms Big Eagle conspired with Raue and others to receive kickbacks from Bauman and Kutz. Big Eagle was not sufficiently prejudiced by McClatchey's testimony to warrant relief in this case.

Big Eagle could have minimized his prejudice by objecting and requesting that the district court strike the allegedly improper testimony and also issue a cautionary instruction. Big Eagle did not move for a mistrial on the basis of this evidence. We prefer not to order a new trial where the defendant failed to raise the issue of a mistrial before the district court. Cf. id. ("We give the district court broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of any possible prejudice. Less drastic measures such as a cautionary instruction are generally sufficient to alleviate prejudice." (internal citations and quotation marks omitted)).

Given the substantial evidence of Big Eagle's guilt, and Big Eagle's failure to object and his decision to rehash the same testimony on cross-examination, we

conclude Big Eagle was not sufficiently prejudiced by the admission of this testimony for us to exercise our discretion to recognize plain error, if any existed.

### III.     CONCLUSION

We affirm.

_____