# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3489

_____

United States of America

*Plaintiff - Appellee*

v.

Jorge Munoz-Ramon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 13, 2015
Filed: July 6, 2015
[Unpublished]

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

A jury found Jorge Munoz-Ramon guilty of one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and

846. The district court[1] sentenced him to 188 months' imprisonment. Munoz appeals, arguing that the district court erred in admitting certain evidence and in imposing the sentence. We affirm.

## I. Background

In early April 2013, Munoz began supplying methamphetamine to Luke Ross, who distributed it. Munoz initially fronted Ross an ounce of methamphetamine. After Ross proved himself to be reliable, Munoz began fronting larger quantities to him. Ross ultimately incurred a drug debt of approximately $17,000. Munoz held Ross's SUV as collateral. On May 23, 2013, Ross was arrested and began cooperating with law enforcement. Ross indicated that he had purchased methamphetamine from Munoz in front of an apartment building located at 25th and G Streets in Omaha, Nebraska.

Over the course of two recorded phone calls placed on May 24, 2013, Ross told Munoz that he intended to pay twelve or thirteen thousand dollars on his debt. He invited Munoz to retrieve the money at the hotel suite where Ross said he was staying. Law enforcement officers outfitted Ross with a recording device, set up audio and video surveillance in the front room of the suite, and then monitored the transaction from the bedroom. After the two phone calls from Ross, Munoz and co-conspirator Froilan Cuevas left the apartment located at 25th and G Streets in Ross's SUV and traveled to the hotel. When they arrived, Cuevas remained in the vehicle. Munoz exited the vehicle and entered the hotel.

Munoz and Ross spoke briefly in the hotel hallway and then entered the hotel room. Ross handed Munoz a tube sock that contained $8,000. After Munoz accepted

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

the payment, he was arrested, handcuffed, and escorted into the bedroom for questioning.

Omaha police officer Robert Branch interviewed Munoz. According to Branch, he explained that Munoz was under arrest and advised Munoz of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Branch testified that Munoz waived his Miranda rights and thereafter told Branch that he had been involved in the distribution of methamphetamine for about ten weeks. Munoz said that Ross was his main customer and that he had been fronting Ross increasingly larger quantities of methamphetamine. Munoz acknowledged that Ross owed him a significant amount of money and that Ross had given him a vehicle as security for the drug debt.

During the post-arrest interview, Munoz said that his supplier instructed him to rent an apartment located at 25th and G Streets. Munoz explained that he had been to the apartment earlier that day to make a payment to his supplier's boss. Branch then drove Munoz to 25th and G Streets, where Munoz identified the apartment. Officers executed a search pursuant to a warrant. They found approximately five pounds of methamphetamine. They also found cash, digital scales, packaging materials, bank deposit slips, a lease agreement in Munoz's name, and drug ledgers recorded in three notebooks.

A superseding indictment charged Munoz with the conspiracy count set forth above. Munoz moved to suppress his post-arrest statements, arguing that he had not waived his Miranda rights. Following an evidentiary hearing during which Branch and Munoz testified, a magistrate judge[2] recommended denying the motion to suppress. The magistrate judge found that Branch was credible and that Munoz was not, that Branch had advised Munoz of his rights, and that Munoz's post-arrest

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

statements were made voluntarily. The district court adopted the magistrate judge's recommendation and denied the motion to suppress.

The case proceeded to trial. Branch, Ross, and Cuevas testified against Munoz. Their trial testimony serves as the basis for the factual background set forth above. As relevant to this appeal, three notebooks that were found in the apartment were entered into evidence. Branch testified that the notebooks contained drug ledgers. Munoz did not object to the admission of the notebooks when they were offered. After the government rested, however, Munoz objected and moved to strike. The district court overruled the objection and denied the motion. The jury returned a guilty verdict and found that the conspiracy involved 500 grams or more of a mixture and substance containing methamphetamine.

A presentence investigation report (PSR) was prepared. The PSR attributed to Munoz the methamphetamine that was found in the apartment. It determined that Munoz's total offense level was 38, that his criminal history category was I, and that his advisory sentencing range under the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) was 235 to 293 months' imprisonment. The PSR recommended a two-level reduction to his total offense level, based on a proposed amendment to the drug-quantity table. If granted, the reduction would lower Munoz's advisory Guidelines sentencing range to 188 to 235 months' imprisonment.

Munoz objected to the PSR's drug-quantity finding and to its exclusion of a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The district court overruled the objections. It granted the two-level reduction recommended by the PSR, denied Munoz's request for a downward variance from the advisory Guidelines sentencing range, and imposed the 188-month sentence described above.

## II. Discussion

## A. Denial of Motion To Suppress Evidence

Maintaining that he was not advised of his Miranda rights, Munoz first argues that the district court erred in denying the motion to suppress his post-arrest statements. Branch testified, however, that he had read Munoz the Miranda rights from the Omaha Police Department rights advisory form, reciting each right individually and pausing to ask whether Munoz understood. Branch testified that he wrote down each of Munoz's responses on the form, but that he did not ask Munoz to sign or initial the form. The form was entered into evidence. Munoz argues that we should view Branch's testimony with skepticism because Munoz did not sign the form and because Branch did not record their post-arrest interaction despite the availability of recording devices.

Munoz has not shown that the district court clearly erred in finding Branch credible. See United States v. Wright, 739 F.3d 1160, 1166 (8th Cir. 2014) (reviewing for clear error a district court's credibility determination). We give great deference to the district court's credibility determinations and have said that those determinations are "virtually unreviewable on appeal." Id. at 1167 (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)). "A district court's decision to credit a witness's testimony . . . can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." Id. (quoting Heath, 58 F.3d at 1275). Munoz has introduced no contradictory extrinsic evidence, and Branch's testimony was neither internally inconsistent nor implausible. Although Branch did not ask Munoz to sign the form, he testified that he had read the Miranda rights to Munoz and that Munoz had indicated that he understood each right. We discern no clear error in the district court's determination that Branch was credible and that he had informed Munoz of his Miranda rights.

B. Admission of the Notebooks

Munoz next argues that the district court erred in admitting the three notebooks that were found in the apartment. Branch described the notebooks and explained to the jury that drug dealers typically use ledgers for accounting, "to document how much money is owed or how much methamphetamine, whatever type of drug it is, is out and what type of money is owed and by who[m]." Branch explained that the information was organized in columns, showing "how much money was owed for the methamphetamine that had been provided." Some of the information contained in the notebooks was written in Spanish, including the word "pagado." Branch testified that "pagado" means "paid." As mentioned above, the notebooks were received into evidence without objection, and only after the government rested did Munoz move to strike them.

Munoz contends that the notebooks may have confused the jury because some of the information recorded therein was in Spanish and was not translated to English. "Although we ordinarily review a district court's decision to admit evidence for abuse of discretion, where a party has failed to make a timely objection, we will review only for plain error." United States v. Shores, 700 F.3d 366, 370 (8th Cir. 2012). Munoz did not object when the government offered the notebooks into evidence. Because he did not object "at the earliest possible opportunity after the ground of objection be[came] apparent," we review the admission of the notebooks for plain error. Id. (alteration in original) (quoting Terrell v. Poland, 744 F.2d 637, 639 (8th Cir. 1984) (per curiam)).

We find no error—much less plain error—in the district court's decision to admit the notebooks. Branch explained that the notebooks included drug ledgers and that such ledgers are used to track drug quantities and payments. The probative value of the notebooks was not necessarily the words written therein, but rather that the notebooks were formatted as ledgers and that ledgers are used for accounting

purposes within drug conspiracies. Munoz's contention that the notebooks' "untranslated foreign material" somehow tainted the jury's verdict is unpersuasive. The district court did not plainly err in finding that the probative value of the notebooks outweighed any danger of unfair prejudice.

## C. Challenges to the Sentence

Munoz first argues that the district court erred when it attributed to him the methamphetamine found in the apartment. "When calculating drug quantity in the context of a narcotics trafficking conspiracy, the sentencing court may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." United States v. Yellow Horse, 774 F.3d 493, 496 (8th Cir. 2014) (quoting United States v. Whirlwind Soldier, 499 F.3d 862, 872 (8th Cir. 2007)). In light of the earlier-described evidence, we find no clear error in the district court's determination that Munoz either knew of or reasonably could have foreseen the methamphetamine located in his apartment. Id. (reviewing for clear error the district court's drug-quantity finding).

Munoz next argues that the district court erred in denying his request for a reduction for acceptance of responsibility. The adjustment, however, is not intended to apply to a defendant like Munoz "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 cmt. n.2. The district court did not clearly err in finding that Munoz had not accepted responsibility. See United States v. Daniels, 625 F.3d 529, 534 (8th Cir. 2010) (reviewing for clear error the district court's finding that the defendant had not accepted responsibility).

Finally, we conclude that the district court carefully considered the sentencing factors set forth in 18 U.S.C. § 3553(a), properly explained its rationale for denying a downward variance, and imposed a substantively reasonable sentence. Gall v.

<u>United States</u>, 552 U.S. 38, 51 (2007) (holding that an appellate court may apply a presumption of reasonableness to a sentence within the advisory Guidelines sentencing range); <u>cf.</u> <u>United States v. Gonzalez</u>, 573 F.3d 600, 608 (8th Cir. 2009) (upholding the denial of a downward variance).

## III.  Conclusion

The judgment is affirmed.

_____